[No. 4514.]

THE FORT LYON CANAL COMPANY v. CHEW ET AL.

1. Water Rights—Priorities—Limitation of Use—Exchange or Loan.

A priority of right to the use of water for irrigation may be limited by time as well as by quantity. Where water has been appropriated for the purpose of irrigating land, it must be so applied without waste, and when not needed for the purpose for which it was appropriated, should be turned back into the stream to be utilized by other appropriators, according to their respective numerical priorities. So long as it is used in connection with a certain tract of land, it cannot be made to do duty to that particular tract, and, when no longer needed therefor, applied to some other particular tract of its owner, or by him exchanged or loaned to some other person, to the injury of the rights of other appropriators.

2.  Water Rights—Exchange or Loan.

If an owner of a priority of right to use water for irrigation may temporarily exchange or loan it to some other water-right owner to be used in irrigating other land than that for which it was appropriated, it cannot be so exchanged or loaned so as to injuriously affect the rights of other appropriators.

3.  Water Rights—Exchange or Loan—Statutory Construction.

Section 3 of an act in relation to irrigation, Session Laws 1899, page 236, 3rd Mills' Ann. Stats. (Revised Supplement), section 2273c, should be interpreted as neither adding to, nor taking from any rights which owners of ditches and water rights had before the act was passed, and if the right to temporarily exchange or loan water as therein provided exists at all, it cannot be exercised so as to injuriously affect the vested rights of others.

4.  Same—Burden of Proof.

Where a party claims the right to the use of water under an exchange or loan, as provided in section 3, Session Laws 1899, page 236, it is incumbent upon such party, when challenged in court, to affirmatively show that the right claimed can be exercised without interfering with or impairing the rights of others.

*Error to the District Court of Otero County:*
*Hon. John H. Voorhees, Judge.*

The plaintiff in error and the defendants in error were, respectively, plaintiff and defendants below. In bringing the action, plaintiff's avowed object, in which defendants co-operated, and in the accomplishment of which the trial court concurred, was to obtain a construction of section 3 of an act of the twelfth

general assembly in relation to irrigation, found at page 236, Session Laws 1899, which reads:

"It shall be lawful, however, for the owners of ditches and water rights, taking water from the same stream, to exchange with, and loan to, each other, for a limited time, the water to which each may be entitled, for the purpose of saving crops or of using the water in a more economical manner; Provided, That the owner or owners making such loan or exchange shall give notice in writing, signed by all the owners participating in said loan or exchange, stating that such loan or exchange has been made, and for what length of time the same shall continue, whereupon said water commissioner shall recognize the same in his distribution of water."

The plaintiff maintains that the section is an unconstitutional, the defendants say that it is a valid, enactment. A brief summary of the complaint, which concisely sets forth the substantial facts which gave rise to the controversy between the parties, will be the best way to bring out clearly the important legal questions involved.

The plaintiff is a domestic corporation and the owner of a canal which is used for the purpose of diverting water from the Arkansas river, to be used and applied by water consumers who are the owners of water rights thereunder. The defendants in the action are the superintendent of water division No. 2 and the water commissioners of included water districts Nos. 14 and 17. The other defendants are domestic corporations, owners of ditches, taking water from the same stream and in the same water districts, which were built, and are now used, as is plaintiff's canal, for irrigating agricultural lands.

All of these corporations, both plaintiff and defendants, were parties to former proceedings under the general irrigation statutes, which resulted

in decrees awarding to their respective ditches the priorities then established. Of the defendants, The Arkansas Valley Ditch and Reservoir Company and The Catlin Consolidated Canal Company, secured priorities senior to, and The Twin Lakes Land and Water Company and The Laguna Canal Company, later than, that of plaintiff.

The Arkansas Valley company having, at the time here in question, no present need for water to supply its consumers, loaned, or pretended to loan, to the Twin Lakes company a certain quantity of water, and its priority therefor, to which the lender claims it was then entitled, and gave the prescribed statutory notice and demanded that the water commissioner, in distributing water, should recognize this loan. A similar loan was made by the Catlin company to The Laguna Canal Company, accompanied by a like demand. The water commissioner recognized the demands and threatened to carry them into effect by diverting to the respective claimants under the loan the quantity of water which the notices specified.

The plaintiff charges that there was then a shortage in the supply of water from the Arkansas river in the water districts affected, and, in consequence of such loans and diversions in accordance therewith, the plaintiff, whose immediate need of water was pressing, would be deprived thereof, although, under the decreed priorities, it was then entitled to use these diversions ahead of the two borrowing companies, which are, as to plaintiff, junior appropriators, when the same were not actually needed by the lending companies, whose priorities are earlier than plaintiff's.

To protect its rights the plaintiff asked for and obtained a temporary writ of injunction restraining the threatened acts. To the complaint was filed a

pleading, which, though as to some of its allegations
is, in form, an answer, in legal effect is nothing more
than a demurrer upon the ground that the complaint
does not state facts sufficient to constitute a cause
of action. The plaintiff moved for judgment upon
the pleadings. The motion was denied, the prelimin-
ary injunction dissolved, and the plaintiff electing
to stand by its motion, judgment was entered dismiss-
ing the action.

Mr. CHAS. E. GAST, for plaintiff in error.

Mr. JOHN R. DIXON, Messrs. HARTMAN & BALL-
REICH and Messrs. DEVINE & DUBBS, for defendants
in error.

Mr. D. C. BEAMAN, Mr. CASS E. HERRINGTON and
Mr. FRED HERRINGTON, *amici curiae.*

Mr. JUSTICE CAMPBELL delivered the opinion of
the court.

From the opinion of the trial court rendered
upon the motion for judgment on the pleadings, which
is brought up in the record, as well as from the briefs
of counsel now on file, it would seem that all the
parties, as well as the trial court, considered the case
made as one necessarily requiring that section 3 be
adjudged valid, or void, in its entirety; and that, if
it was upheld as a valid act, the complaint was bad;
if it was void, the complaint was good.

The court was of opinion that this section does
not confer upon water-right owners any rights or
privileges which they did not theretofore have. The
court also thought that, since by our decision in
*Strickler v. City of Colorado Springs,* 16 Colo. 61, and
other subsequent cases, the owner of what is com-
monly called a water right may change its point of
diversion and place and nature of use, and sell it sepa-
rately from the land in connection with which the

right ripened—it logically follows that temporary exchanges or loans of water rights may be made for a limited time. The ruling, therefore, was that the section was valid, and the action was dismissed.

The act in which the section is found is entitled "An act in relation to Irrigation." Sections 1 and 2 provide a method of procedure for one who desires permanently to change the point of diversion of his right to use water from any of the streams of this state for the purpose of irrigation. In substance, they absolutely prohibit such change, unless and until the court having jurisdiction of the subject-matter first makes an investigation and determines that the vested rights of others will not thereby be injuriously affected. Section 3, not only because of the title, but from a fair construction of its own language, is restricted to exchanges and loans of water for irrigation purposes only. The parties who are concerned in the exchange, the lender and the borrower, must each and all be the owners of rights to the use of water for irrigation.

In the Strickler case and the others following it, we have said that a priority to the use of water for irrigation is, in itself, a property right, and may be sold and transferred separately from the land in connection with which it ripened, and that a prior appropriator may change the point of diversion or place of use, or the character of the use, without losing his priority, provided the rights of others are not thereby injuriously affected. The trial court, as well as counsel for defendants in error here, says that it is a necessary deduction from these decisions that the owner may, for a limited time or temporarily, exchange, or make a loan of, a water right. The argument is, that such act constitutes merely a change in the point of diversion, or place of use, temporarily instead of permanently, for a limited, instead of an indefinite, peri-

od; that the right to sell absolutely includes the lesser right to lease or exchange, and the absolute right to do each ·and all is a necessary incident of ownership. In support of this conclusion, we are cited to some of our own decisions, which we proceed to consider.

In *Irrigating Co. v. Reservoir Co.*, 25 Colo. 144, 150, we said that one tenant in common might preserve the entire estate held in common, and where a priority had been adjudicated in favor of a ditch which was owned by tenants in common, so long as no more than the decreed quantity was diverted from the common source of supply, and the same was not wasted, it made no difference to a junior appropriator whether or not the quantity thus diverted, and to which the ditch as a carrier was entitled, was ·used by the tenants in common in exact accordance with their respective holdings; but that, if one consumer did not need or use all that his right called for, he might lawfully sell or lease it, or permit his cotenant to use it, before any subsequent appropriation attached thereto. This language must be taken in connection with the facts of the case in which it was employed. There the only complaint made was, that by reason of the arrangement between the tenants in common, there was an enlarged use of the water in volume, and the only evidence directed to that issue was that a larger acreage was being irrigated than formerly had been. The point was not mooted, that a priority of a certain volume was being used for a longer time than its owners were entitled to use it, or that the owner, after using it for his own land, could pass over a junior appropriator, and grant a right to a further use to another appropriator junior to the one passed over.

In *King v. Ackroyd*, 28 Colo. 488, 495, the change of place of use there under consideration was held to

be legally made, since no rights of other appropriators were injuriously affected. The only claim there asserted in support of the charge that injury resulted, was that a greater quantity was used after, than before, the change was effected; but having determined that no greater quantity was used after the change, the objection thereto was overruled.

In *New Cache La Poudre Co. v. Water S. & S. Co.,* 29 Colo. 469, 474, in holding that the first two sections of this act applied to attempted changes of the point of diversion which were not fully completed at the time the act took effect, we observed that—except in a certain contingency not material here—whether or not the place of diversion may be changed could not be determined in that proceeding by the manner of use, or the quantity of water employed, or the length of time which the same is to be enjoyed by plaintiff after changing from the headgate of one ditch to that of another. That case contains nothing which can fairly be invoked as authority for the proposition that exchanges and loans of water may be made without reference to the vested rights of other appropriators from the same natural stream. There is, however, an intimation there that a priority may be measured by time, as well as volume.

These cases, as well as others in which the doctrine has been expressly announced, are authority for the proposition that a priority of right to the use of water for irrigation may be limited, not only by quantity, but also by time. That is to say, when an appropriation of water from a natural stream of this state is made, it can only be made for the purpose of being applied to the irrigation of land, and it must be so applied without waste, and, when not needed for the purpose for which it was appropriated, should be turned back into the natural stream, to be utilized

by other appropriators in accordance with their respective numerical priorities. So long as it is used in connection with a given tract of land, it cannot be made to do duty to that particular tract, and, when no longer needed therefor, applied to some other particular tract of its owner, or by him exchanged or loaned to some third person, to the injury of the rights of other appropriators.

It is not now necessary definitely and finally to say that an owner of a right to use water for irrigation may not, temporarily, or for a limited time, exchange it with, or loan it to, some other water-right owner to be used for irrigating land, in the same, or some other, water district, under conditions and in circumstances where such change of place of use or point of diversion does not injuriously affect the rights of other appropriators; or that such temporary exchange or loan may not be made when its owner has no present immediate use for it, though he does not wish to sell it. But when such exchange or loan is made, if it can be done at all, it must be with due regard to the rights of other appropriators taking water from the same source of supply. In all the decisions which recognize the legality of a sale and the right to make a permanent change of the point of diversion, or change of place of application, or the nature of the use, particular attention is called to the fact that it is not an absolute, but a qualified, right, and cannot be exercised if it injuriously affects the rights of others. Just what, in every case, such injury may consist of, or how it may be shown, it is not for us now to determine.

To a temporary exchange or loan, if permissible in any case, the same principle is applicable, and the right thereto is subject to the same qualification that governs an absolute sale, or a permanent transfer. If section 3 purports to create rights which did not

theretofore exist, or if it is to be interpreted as permitting exchanges or loans of water without reference to the rights of other appropriators, it cannot be upheld as a valid legislative enactment. Such interpretation, however, we do not put upon it. If it can be so construed as not to infringe the constitution or impair vested rights, such meaning should be given it. The language of the section is that owners of ditches and water rights may exchange or loan water *to which each may be entitled*. This limitation itself restricts such exchanges and loans to such as may be made without injury to the rights of others. It may savor of reasoning in a circle, but the water to which its owner is entitled is only that water whose use, in the legal sense, does not injure others; hence, if the use of water by an owner himself, or by his agent or lessee, works no injury to anyone, nobody can complain. But if his use of water, by himself, or others with his consent, either by diverting and applying a larger volume than his priority calls for, or by using his decreed volume for a longer time than his needs require—in other words, if he exceed his priority, either in volume or time—this act would, in time of a shortage, injuriously affect the rights of other appropriators; therefore he is not, in such circumstances, using water to which he is entitled, and under the plain language of the section, loans or exchanges which result in such wrongs, are not within its purview and would be unlawful, even if a statute expressly authorized them.

In brief, it is our opinion that this section neither adds to, nor takes from, any rights which owners of ditches and water rights had before the act was passed. Theretofore they had, under the irrigation laws of this state and the uniform decisions of our court, the right to make a sale of water rights separate from the land in connection with which the right

was initiated and became perfected, and to change the point of diversion, place and character of use; *provided*, always, that in its exercise the rights of others are not injuriously affected.  It would seem to follow from this that the lesser right temporarily to exchange or loan water should be attended with the same results, and be subjected to the same limitation, if, indeed, it exists in a given case.

Sections 1 and 2 of the act prohibit the change in point of diversion until the party desiring to make the same has obtained an adjudication of the court that it can lawfully be accomplished without impairing the vested rights of others; that is to say, the right cannot be exercised at all until after a decree therefor has been obtained that vested rights are not impaired.  Section 3 seems to recognize a temporary exchange or loan of water without first obtaining a decree.  The right, however, in the latter case, if it exist at all, as we have already held, is just as much subject to the qualification that the vested rights of others are not to be impaired as in the case of an attempted permanent change of the point of diversion.  And when it has been made, though it may be effected without first obtaining a decree therefor, it is incumbent upon the party asserting rights under the loan or exchange, when challenged by an action in court, affirmatively to show that it can be exercised without interfering with, or impairing, the rights of others.

*New Cache la Poudre Co. v. Water S. & S. Co.,* *supra,* while differing in its facts, we believe to be, in principle, authority for our conclusion in this case.

*Slosser v. Salt River Val. Canal Co.* (Ariz.) 65 Pac. 332, is an interesting case decided by the supreme court of Arizona.  Plaintiff cites it to the point that exchanges or loans of a water right are wholly unau-

thorized. It may be, and doubtless is, true that under the facts of that case the lease there attempted was, under the laws of that territory, unlawful; for the lessor was trying to make a given priority do double duty by applying it first to his own land, and then to that of his lessee, as against the rights of other appropriators. And we may also concede that, under the same state of facts, such lease could not be upheld under our laws. But, as the writer of the opinion in that case well says, the peculiar statutes of Arizona relating to irrigation, which, like those of the territory of New Mexico, are based on the Spanish and Mexican laws, are so unlike those of Colorado and other states which have grown out of the local customs of miners, that the decisions of one state are not necessarily controlling in the others. And it would be unwise and dangerous to try to graft upon either system all the doctrines which have been established in the other. And yet, in summing up the feature of that case, analogous to the case at bar, the court there made a declaration which is applicable under our own laws, when it said: "But we desire to be understood simply as holding that, so long as a water right is attached to a particular piece of land, it cannot be made to do duty to such land, and as well to other land not owned or possessed by such water-right holder, at the will or option of the latter." As at present advised, we do not say that loans or exchanges may, or may not, be made, but we do say that the right to make them must be clearly shown by the party asserting its existence.

Let us apply the foregoing principles to the case at bar. While the complaint may not be as specific as is desirable, yet, as against a general demurrer, it is sufficient to put the defendants upon proof that the plaintiff's rights have not been injured. For the allegations, in substance, are that two defendants,

whose priority rights are senior to plaintiff's, have, at a time when they did not need the water, loaned the same to two other defendants, whose rights are junior to the plaintiff's, and that when the loan was made there was a shortage of water in the stream, and, had it not been for such loans, the plaintiff, in accordance with the priority decree, was entitled to, and would have received, this water before the two junior defendants were supplied. If, as a matter of fact, these loans were made under conditions and in circumstances which permit of exchanges and loans of water, it is only right and proper that the burden of establishing the same be put upon the parties thereto. That this is the rule that should prevail seems only fair and just.

An appropriation of right to use water for irrigation cannot be perfected in this state until, among other things, there has been an actual diversion of water from a natural stream and within a reasonable time an application of the same has been made to a beneficial use. The appropriation must be made in connection with some particular tract of land, and though it be not essential to its continued existence that the application shall be forever confined to the identical land for which the diversion was made, yet, so long as the water is used in connection with that land, it cannot be made to do duty thereto and at the same time, or in the same season, be used for the irrigation of some other tract, as against the rights of other appropriators which have theretofore attached. Such being the law of this state, when such exchanges or loans are made, or attempted to be made, they ought not to be permitted, if at all, until the parties seeking their benefits have clearly established that the alleged qualified right has been exercised in such a way, and at such times and in such circumstances, that the vested rights of others are not injured. The

general rule is that when an appropriator has no present need of water for irrigating his lands, he must not divert it from the natural stream, but it is his duty to let it flow in the natural channel to be enjoyed by other appropriators as their numerical priorities entitle them. If a senior appropriator who has not such need for his own land may disregard the usual rule and pass over one or more appropriators who are junior to him, and confer upon other appropriators, who are junior to those ignored, his senior rights, it is his duty to show the facts that justify the departure.

The application of these principles to the present action makes the ruling of the court below erroneous; and the judgment, therefore, should be reversed and the cause remanded for further proceedings, in accordance with the views expressed in this opinion.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.