[No. 4199.]

PHILLIPS INVESTMENT COMPANY V. COLE ET AL.

1. WATER. RIGHTS. —*Adjudication of Priorities—Single Stream. Semble.* That an adjudication may be had of the priorities of consumers from a single stream.

2. —— *Decree—Change of Use.* A consumer will not be heard to complain that in a decree adjudicating priorities another consumer is permitted to change the use from storage to direct use, where he is in no manner prejudiced by the change. (542.)

3. —— *Change of Point of Diversion—Statute Construed.* The statute regulating the proceeding for securing the right to change the point of diversion (Rev. Stat., secs. 3226-3229) applies only to the case of a water right already adjudicated. It is not error to permit a change of the point of diversion, in an original proceeding for the adjudication of the water rights upon a particular stream, all parties in interest being present, and no prejudice to those complaining being shown. (543.)

*Error to Bent District Court.* HON A. WATSON MCHENDRIE, Judge.

Mr. GRANBY HILLYER, for plaintiff in error.

Mr. D. B. KINKAID, for defendants in error.

KING, J., rendered the opinion of the court.

November 4, 1909, in a general adjudication of water rights, The Phillips Investment Company was awarded priority number one, in the waters of Graveyard Creek. Within four years thereafter, defendants in error brought this suit, in the nature of a proceeding in equity to determine their claim of priority of right to water from said creek for irrigation purposes, as permitted by section 3313, R. S. '08, section 3836, M. A. S. '12, making The Phillips Investment Company, and apparently all others on that creek, parties defendant. To review the decree awarding plaintiff priority over it, the plaintiff in error brings the cause to this court on error.

The points relied on as error are: (1) that although the water right proven by plaintiffs was for storage, the decree is for direct appropriation from the stream, for immediate use; (2) that a change of the point of diversion of their water rights was granted plaintiffs in this proceeding, without authority of law. Although not free from doubt, we thing the objections noted are not sufficient to justify reversal.

Graveyard Creek is the name of a prairie "draw" or ravine. It had no natural flow of water, except in times of flood, until about the year 1900. About that time water from seepage began to appear in the upper (i. e., northern), course of the ravine, due probably to the presence of irrigation canals crossing it or located in the vicinity thereof. In 1900, for the purpose of intercepting and appropriating this seepage water, K. E. Messenger threw a dam across the said creek, in section four, township twenty-two south, range forty-eight west, thereby creating a small reservoir, and made a ditch called the "Supply Ditch," extending from the dam about two miles to the north, both dam and ditch being constructed and used for the purpose of collecting and storing the seepage water as it accumulated, to be used, and which was used in part, for irrigation of land in section twenty-one, now owned by one of the plaintiffs. In this

proceeding the ditch built by Messenger, below the reservoir as well as above it, is named the "Supply Ditch." According to the finding and decree of the court, Messenger made an appropriation of three cubic feet of water per second of time, which he thereafter sold to plaintiff. From 1900 until 1906 the water used by Messenger was diverted from the creek near the north line of section sixteen, one and one-half miles below the reservoir, through a ditch herein called the "old ditch." In 1906 plaintiff constructed the "Cole and Bever Ditch," having its headgate on the creek about one-half mile south of the old ditch, and from that time until 1913, when prevented by plaintiff in error, the water purchased from Messenger was diverted through the Cole and Bever Ditch. This ditch of the Investment Company diverts its water from the creek two and one-half miles further down, and its priority dates from January 27, 1906, a short time before the Cole and Bever Ditch was made and used. Such other testimony as seems necessary will be noted in the opinion.

1.  The evidence tends to show that from 1900 to 1906 practically all the water in the creek, whether stored or not, was used by Messenger. For that reason, under the peculiar facts of this case, surrounding the development and use of his water right, as the seepage increased, and prior to any right acquired or claim made by plaintiff in error, it is immaterial whether the water was first stored or detained in the reservoir, and thence taken to the land, or permitted to flow dierctly to the place of diversion and use. The change resulted in no greater draft on the waters of the stream, either in volume or time of use. The necessity, as well as advantage, of holding water in the reservoir while the seepage was first developing, so as to accumulate a volume or quantity sufficient for practical use, is obvious. Plaintiff in error is in no manner prejudiced by the alleged change from storage to diversion for immediate use; in fact the evidence shows that for a number of years the waters

flowed through the reservoir or dam without being stored and were so used by plaintiffs, without objection by plaintiff in error.

2. The contention that the court erred in granting to plaintiffs the right to divert water to which they are entitled, at the head of the Cole and Bever Ditch, instead of limiting them to a diversion at the head of the old ditch, is based on the claim, first, that a change of point of diversion may not be decreed except when prayed for in the special statutory proceeding for that purpose,—Chapter 124, Session Laws 1903; and second, that the change permitted in the instant case injuriously affects the rights of plaintiff in error.

We think the special act of 1903, prescribing the procedure for determining the right to change point of diversion, may not be successfully invoked by plaintiff in error to defeat this decree. That act, *ex vi termini*, seems to apply only to proposed changes in point of diversion of adjudicated water rights. All the decisions holding that said act provides an exclusive remedy for trying the right to change place of diversion refer to adjudicated rights, the place of diversion of which had been fixed by a prior decree. *Irrigation Co. v. Water S. & S. Co.,* 39 Colo., 469, 68 Pac., 781; *Fort Lyon Canal Co. v. Chew,* 33 Colo., 392, 397, 81 Pac., 37; *Fluke v. Ford,* 35 Colo. 113, 84 Pac. 569; *Farmers' Co. v. Wolf,* 23 Colo. App., 570, 131 Pac., 291. This proceeding constitutes an original adjudication of the water rights on Graveyard Creek, for, although plaintiff in error had obtained a decree, it was obtained without notice, and constituted no bar to the present proceeding. It appears that all parties that might be affected by the decree were before the court, and we know of no reason why the question of the diversion of the water rights at the point contended for, was not properly an issue that might and should be tried and settled. Under the facts of this case we find neither statute, judicial announcement, nor reason, which would compel or

justify a reversal because of the provision of the special act mentioned.

The record fails to sustain the contention that the rights of plaintiff in error have been, or will be, injuriously affected by permitting the diversion of plaintiffs' water rights at the head of the Cole and Bever Ditch. From the outlet of the Messenger reservoir, to the head of the old ditch, the creek bed and the ditch made and used by him to carry the water from the reservoir to the land irrigated thereby, are coincident. It is now urged by plaintiff in error that seepage in large quantities developed in the creek below the reservoir, not contemplated in the original Messenger system or claim, and that contention is supported by the evidence, but it is shown that all that water was used by Messenger in the irrigation of his land, at least to the extent of his decreed priority, for the every simple but conclusive reason that it could not get by the diversion dam. It is also urged that a substantial flow of seepage comes into the creek between the dam at the head of the old ditch, and the dam at the head of the Cole and Beaver Ditch, but the record here fails to sustain that contention. Moreover, the decree and the findings taken together limit the prior rights of defendants in error to the water right purchased by them from Messenger. It does not include any water developing or having its source in the creek below the diversion dam at the old ditch.

Perceiving no prejudicial error, the judgment will be affirmed.

*Judgment affirmed.*