**In the Matter of the Application for Additional and Alternate Point of Diversion of Water Rights of Albin S. D. ROMINIECKI and Jean D. Sylvester Rominiecki, In Gunnison County, Colorado, Applicant-Appellant,**

v.

**McINTYRE LIVESTOCK CORPORATION and Ragged Mountain Water Users Association, the United States of America, and Ralph V. Kelling, Jr., Division Engineer, Objectors-Appellees.**

**No. 80SA129.**

Supreme Court of Colorado,
En Banc.

Aug. 17, 1981.

Rehearing Denied Sept. 8, 1981.

---

Brown & Brown, A. Allen Brown, Delta, for applicant-appellant.

Golden, Mumby, Summers & Livingston, James Golden, Grand Junction, for McIntyre Livestock Corp. and Ragged Mountain Water Users Association.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Connie L. Peterson, Asst. Atty. Gen., Denver, for Ralph V. Kelling, Jr.

LOHR, Justice.

Albin S. D. Rominiecki and Jean D. Sylvester Rominiecki (applicants) appeal from a judgment of the water court denying their application for an alternate point of diversion for two direct-flow water rights utilized to irrigate high mountain meadows owned by the applicants and located above the Paonia Reservoir in Gunnison County, Colorado. The trial court concluded that to grant the request would accomplish an impermissible substitution of one source of supply for another with resulting injury to others. Because it appears that the application can be granted without such injury if certain conditions are imposed, we reverse the judgment of the water court and remand this matter for further proceedings.

A description of the relevant water rights and lands owned by the parties will set the stage for our discussion of the issues in this case. Reference to Appendix A, a sketch of the creeks and properties involved here, will assist the reader in understanding the following descriptions.

The applicants own a water right for 1.25 c.f.s. decreed to Ditch No. 1, which was awarded priority A–47, with an appropriation date of June 17, 1897, by a decree dated June 23, 1914 (the 1.25 c.f.s. right).

The decreed point of diversion is on Little Muddy Creek a tributary of East Muddy Creek, which in turn is a tributary of the North Fork of the Gunnison River.

The applicants also own a water right for 0.5 c.f.s. decreed to Ditch No. 2, which was awarded priority A–102, with an appropriation date of June 17, 1908, by a decree dated June 23, 1914 (the 0.5 c.f.s. right). The decreed point of diversion is on East Muddy Creek, slightly below the confluence of Little Muddy Creek and Clear Fork Creek, which form East Muddy Creek by their joinder.

Two adjoining placer mining claims are owned by the applicants. The St. Louis Placer (the "Upper Place") straddles Little Muddy Creek and extends downstream to a point slightly below its confluence with Clear Fork Creek. The Ouray Placer (the "Lower Place") straddles East Muddy Creek for a distance downstream from the lower boundary of the Upper Place.

The original decreed point of diversion of the 1.25 c.f.s. right is at the headgate of Ditch No. 1 on the Upper Place, and the water there diverted was used to irrigate meadows on the Upper Place. On November 17, 1972, a change of point of diversion of the 1.25 c.f.s. right was decreed by the District Court for Water Division Number 4, upon the request of the applicants' predecessors in interest. The newly decreed point of diversion is located at the headgate of Ditch No. 2 on East Muddy Creek. Water diverted at this new location on the basis of the 1.25 c.f.s. right has been used to irrigate meadows on the Lower Place, even though no application for a change of place of use has been granted or sought.

On January 31, 1964, before the change of point of diversion for the 1.25 c.f.s. right

was requested, the applicants' predecessors in interest obtained a decree to Elks Beaver Ditch for 7.00 c.f.s., priority K–127, with an appropriation date of August 10, 1955. The decreed point of diversion is on Clear Fork Creek about a mile and a half above the headgate of Ditch No. 2.

The water right decreed to Elks Beaver Ditch is now used to irrigate the Upper Place. However, by late July or August of each year the full supply of water in Clear Fork Creek is needed to satisfy the requirements of holders of senior water rights downstream. Consequently, the Elks Beaver Ditch headgate is closed during the latter part of each irrigating season. To obtain a late-season supply of water to finish the hay crop on the Upper Place, in the case now before us the applicants requested an alternate point of diversion for the 1.25 c.f.s. right and the 0.5 c.f.s. right[1] at the Elks Beaver Ditch headgate.

Statements of opposition to the application for an alternate point of diversion were filed by McIntyre Livestock Corporation (McIntyre) and Ragged Mountain Water Users Association (Ragged Mountain). McIntyre owns a water right for 4 c.f.s. decreed to Ditch No. 3, which has its headgate on East Muddy Creek about a mile downstream from the headgate of Ditch No. 2. The priority number, decree date and appropriation date for Ditch No. 3 are identical to those for Ditch No. 1. Ragged Mountain is an association of water users on tributaries of Muddy Creek. It was formed to purchase stored water in Paonia Reservoir to enable members to make out-of-priority diversions in exchange for release of compensatory amounts of water from the reservoir.[2] To the extent that any

---

1. The evidence does not establish whether the priority of the 0.5 c.f.s. right is early enough to support late-season diversions.

2. A statement of opposition was also filed by the United States of America. The United States and the applicants entered into a stipulation for withdrawal of the statement of opposition upon the inclusion of a provision in the referee's ruling and in the decree making the applicants' rights subject to all rights of the United States of America in the Gunnison River. The United States did not participate further. Pursuant to C.A.R. 1(e), however, the United States of America is designated as an appellee. The division engineer is designated as an appellee based on that same rule. He has entered an appearance and has joined in and supplemented the brief of McIntyre but has not participated further.

change in water usage upstream of the reservoir inhibits the filling of Paonia Reservoir, the rights of Ragged Mountain are adversely affected.

A hearing on the application was held before the water referee, who concluded that the combination of the requested alternate point of diversion and the previously decreed change of point of diversion would change the source of supply for the 1.25 c.f.s. right from Little Muddy Creek to Clear Fork Creek and "would definitely jeopardize other priorities on the stream." Accordingly, the referee ruled that the application should be denied. Although not the subject of separate discussion, denial of the portion of the application requesting an alternate point of diversion for the 0.5 c.f.s. right also resulted from this blanket ruling. The applicant protested the referee's ruling. After a hearing, the water court affirmed the referee's denial of the application. During that hearing the protestants McIntyre and Ragged Mountain also sought an order requiring that the applicants remove certain fallen trees from the channel of East Muddy Creek above the headgate of Ditch No. 2 because they were altering the stream flow at that headgate. The water court granted this relief in its decree affirming the referee's ruling. The applicants then appealed to this court.

The late-season flow in Clear Fork Creek is greater than that in Little Muddy Creek, at least during times when local rains do not augment the flow. Priority number A-47 assigned to the 1.25 c.f.s. right is an early priority on the stream system. Thus, at the core of the protestants' position is the contention that if the requested change of point of diversion is granted the applicants will be able to divert up to 1.25 c.f.s. from Clear Fork Creek in late season when the flow in Little Muddy Creek at the original point of diversion is less than that amount. The result, the argument runs, will be less water in East Muddy Creek to satisfy the needs of appropriators on that stream. The applicants answer that the change of point of diversion from Little Muddy Creek to East Muddy Creek in 1972

enabled the applicants to divert from the full flow of East Muddy Creek at the new point of diversion based on the 1.25 c.f.s. right. Accordingly, the applicants claim that the injury now complained of was accomplished in 1972, and it is too late for the objectors to assert it now. For reasons explained below, we need not consider the merits of these competing contentions.

We first consider the application as it relates to the 1.25 c.f.s. right, and later give attention to the requested alternate point of diversion for the 0.5 c.f.s. right.

### The 1.25 c.f.s. Right

 An implied limitation is read into every decree adjudicating a water right that diversions are limited to an amount sufficient for the purpose for which the appropriation was made, even though such limitation may be less than the decreed rate of diversion. *Weibert v. Rothe Brothers, Inc.*, Colo., 618 P.2d 1367 (1980); *Hoehne Ditch Co. v. Martinez*, 71 Colo. 428, 207 P. 859 (1922); *Baca Ditch Co. v. Coulson*, 70 Colo. 192, 198 P. 272 (1921). Thus, an appropriator has no right as against a junior appropriator to divert more water than can be used beneficially, *Pulaski Irrigating Ditch Co. v. City of Trinidad*, 70 Colo. 565, 203 P. 681 (1922); *Baca Ditch Co. v. Coulson, supra; Ft. Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 P. 37 (1905), or to extend the time of diversion to irrigate lands other than those for which the appropriation was made, *Enlarged Southside Irrigation Co. v. Johns Flood Ditch Co.*, 116 Colo. 589, 183 P.2d 556 (1947); *Baca Ditch Co. v. Coulson, supra; Ft. Lyon Canal Co. v. Chew, supra; Cache La Poudre Reservoir Co. v. Water Supply & Storage Co.*, 25 Colo. 161, 53 P. 331 (1898). Applying these rules to the instant case, the applicants' decree for the 1.25 c.f.s. right was subject to the implied limitation that diversions must be limited in quantity and time to those which could be put to beneficial use for irrigation purposes on the Upper Place, the land for which the evidence indicates the original decree was

entered.[3] These limitations are fully consistent with the requested additional point of diversion, since the applicants seek to utilize the water on the same lands and for the same purposes for which the 1.25 c.f.s. right was originally decreed.

 A change from a fixed point of diversion to an alternate point of diversion constitutes a change of water right. Section 37–92–103(5), C.R.S.1973; *Southeastern Colorado Water Conservancy District v. Rich*, Colo., 625 P.2d 977 (1981). A proposed change of water right is to be evaluated under the following statutory criterion:

> "A change of water right . . . shall be approved if such change . . . will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right."

Section 37–92–305(3), C.R.S.1973. *Southeastern Colorado Water Conservancy District v. Rich, supra; see, e. g., Weibert v. Rothe Brothers, Inc., supra; Cline v. McDowell*, 132 Colo. 37, 284 P.2d 1056 (1955). The burden of showing absence of injurious effect is upon the applicant. *E. g., Trinchera Ranch Co. v. Trinchera Irrigation District*, 83 Colo. 451, 266 P. 204 (1928).

The protestants contend that they will be injured because the late-season flow in Clear Fork Creek is greater and more dependable than the flow in Little Muddy Creek. As a result, if the requested change is granted, the applicants will be physically able to divert water from Clear Fork Creek for irrigation on the Upper Place at times when such diversions could not be made at the original point of diversion of the 1.25 c.f.s. right because of the inadequate flow in Little Muddy Creek.

The question of injury is complicated by the possible res judicata or collateral estoppel effect of the 1972 decree changing the point of diversion of the 1.25 c.f.s. right upon the protestants' ability to complain of the alleged change in the source of water to satisfy the applicants' 1.25 c.f.s. right, and by the omission of any condition in the 1972 decree limiting diversions at the changed point of diversion to historical use. *See Weibert v. Rothe Brothers, Inc., supra.* We need not resolve the effect of the 1972 decree, however, in light of concessions made by counsel in oral argument before us.

 During oral argument before this court, counsel for the applicants was asked if his clients would accept a condition on the requested alternate point of diversion limiting diversions at the headgate of Elks Beaver Ditch, based upon the 1.25 c.f.s. right, to the flow available at the original headgate of Ditch No. 1 on Little Muddy Creek at the time of diversion. He agreed that such a condition would be acceptable to his clients.[4] Counsel for protestants McIntyre and Ragged Mountain indicated, without specifically agreeing, that such a condition would protect his clients' rights.[5] We con-

---

3. The original decree was not offered in evidence.

4. Counsel for the applicants responded to questions from the court as follows:

> "Q: One more question. If the new change of point of diversion that . . . or alternate point of diversion that you're asking for were conditioned on the amount of water that you take being available at the headgate of Ditch Number 1 on Little Muddy Creek, why wouldn't that give you everything you're entitled to?
> A: We're willing to put that condition in. I don't think Mr. McIntyre is though. We've had to close some of his ditches this summer.
> Q: That condition would be acceptable to your client?
> A: Yes sir."

5. Counsel for McIntyre and Ragged Mountain responded to questions from the court as follows:

> "Q: In your view, would your client have been protected if this requested change of point of diversion or alternate point of diversion had been allowed with the condition that diversions could be made only when that much water is available at the original headgate of Ditch No. 1?
> A: Well I . . . let me rephrase your question to see if I understand it. Are you referring to water available at the original Ditch No. 1 on the Muddy Creek?
> Q: Yes, sir. On Little Muddy Creek.
> A: On the Little Muddy Creek. Well, I would . . . I haven't had a chance to consult with my client to answer that question . . . get his feelings on it. But I would . . . I

clude that if the proposed condition will permit the change to be accomplished without injuriously affecting the owner of or persons entitled to use water under a vested water right or decreed conditional water right, the change should be permitted on that condition. Section 37–92–305(3), C.R.S. 1973. Although not suggested before the trial court, we conclude that it is in the interest of justice to permit the change on the proposed condition if the trial court, on the basis of the existing record and any additional evidence which may be presented in the court's discretion, finds that imposition of the condition will prevent injury to others.

### The 0.5 c.f.s. Right

■ Neither the referee's ruling nor the trial court's findings and conclusions reflects why the application for an additional point of diversion for the 0.5 c.f.s. right was denied. Different considerations than those involved in the application for the additional point of diversion for the 1.25 c.f.s. right are applicable in evaluating whether injury to others will result from such a change. No new source is involved with respect to the proposed alternate point of diversion for the 0.5 c.f.s. right, since the flow of Clear Fork Creek was available to satisfy the 0.5 c.f.s. right at its original point of diversion at the headgate of Ditch Number 2. However, the request for an alternate point of diversion for the 0.5 c.f.s. right implicitly involves as well a request for a change of place of use from the Lower Place to the Upper Place. A change of place of use is a change of water right. Section 37–92–103(5), C.R.S. 1973. The effect of such a change on the rights of others was not addressed by the trial court as required by statute. *See* section 37–92–305(3), C.R.S. 1973. On remand, that court should consider whether the alternate point

of diversion for the 0.5 c.f.s. right can be allowed without injury, applying the standards prescribed by statute and applied by us on other occasions. *See* section 37–92–305(3), C.R.S. 1973; *see also, Southeastern Colorado Water Conservancy District v. Rich, supra; Weibert v. Rothe Brothers, Inc., supra.*

### Conditions Proposed by Applicants

During the course of the trial the applicants offered to forego all diversions at the Elks Beaver Ditch headgate in years when the Paonia Reservoir does not fill and to forego diversions at that headgate in all years until mid-July. On remand the trial court should consider these proposed conditions for inclusion in any decree granting the application for an alternate point of diversion for both the 1.25 c.f.s. and 0.5 c.f.s. rights. The trial court should also consider inclusion of any other conditions which the evidence shows to be necessary to prevent injury to others.

### Removal of Trees From Stream

The applicants argue that the trial court lacked authority to require them to remove certain fallen trees which alter the course of the stream just above the headgate of Ditch No. 2. The basis for this contention is that the issue was not raised until trial and that in any event the evidence does not support the conclusion that the applicants are responsible for the location of the trees. On the contrary, our review of the record reflects that the issue was tried by consent, *see* C.R.C.P. 15(b), in that the applicants permitted evidence to be presented without objection, cross-examined witnesses on the point, and introduced evidence of their own relating to this issue. The ruling of the trial court is supported by the evidence and so will not be disturbed by us. *E.g., Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

guess I don't know that my client would have any strong objections to that. It's holding him down to what the historical source of supply is and that's one of our main arguments that they are improving their position

in getting a better source. But I would hate to make a commitment statement without consulting with my client. I'm just giving you my reaction of what I think my client would say."

The judgment of the trial court is reversed and the cause is remanded for further proceedings, including the taking of additional evidence in the discretion of the water judge, consistent with the views expressed in this opinion.

HODGES, C.J., does not participate.

APPENDIX "A"

Watershed of
Clear Fork Creek

—Elks Beaver Ditch
& Headgate

Ditch No. 1
& Headgate

CLEAR FORK
CREEK

/Channel Eroded Around
Fallen Trees

Confluence

Watershed of
Little Muddy
Creek

LITTLE MUDDY CREEK

/Fallen Trees

St. Louis Placer
(Upper Place)

—Ditch No. 2 &
Headgate

Ouray Placer
(Lower Place)

N.

EAST MUDDY CREEK

Ditch No. 3
& Headgate

W. ——————E.

S.

To Paonia Reservoir
& Gunnison River

To McIntyre
Ranch

NOTE: This
sketch is schematic; it
is not to scale.