In the Matter of the Application for WATER RIGHTS OF the CITIES OF AURORA AND COLORADO SPRINGS, IN EAGLE, LAKE AND PITKIN COUNTIES.

The CITY OF AURORA, Colorado, and the City of Colorado Springs, Colorado, Appellants,

v.

The DIVISION ENGINEER FOR WATER DIVISION NO. 5, Orlyn Bell, the State Engineer, Jeris Danielson, and Holy Cross Wilderness Defense Fund, Colorado Mountain Club, and Vail Valley Consolidated Water District, Appellees.

No. 88SA450.

Supreme Court of Colorado,
En Banc.

Oct. 9, 1990.

As Modified on Denial of Rehearing
Oct. 29, 1990.

Anderson, Johnson & Gianunzio, Gregory L. Johnson, Mark T. Pifher, Colorado Springs, for appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peggy M. Ventura, First Asst. Atty. Gen., for Div. Engineer and State Engineer.

Lori Potter, Denver, Frances M. Green, Boulder, for appellees Holy Cross Wilderness Defense Fund and Colorado Mountain Club.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for appellee Vail Valley Consol. Water Dist.

Martha Phillips Allbright, Eric Twelker, Denver, for amici curiae Mountain States Legal Foundation, Colorado Cattlemen's Ass'n, Colorado Farm Bureau, and Nat. Cattlemen's Ass'n.

Fairfield & Woods, P.C., Howard Holme, Kevin B. Pratt, Denver, for amicus curiae Southeastern Colorado Water Conservancy Dist.

Davis, Graham & Stubbs, Gregory J. Hobbs, Jr., Donna Melson Arthur, Bennett W. Raley, Denver, for amicus curiae Colorado Water Congress.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Denver, for amicus curiae City and County of Denver, acting by and through its Board of Water Com'rs.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen.; Linda E. White, Asst. Atty. Gen., for amicus curiae Colorado Water Conservation Bd.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellants, the City of Aurora, Colorado, and the City of Colorado Springs, Colorado (hereinafter the Cities), seek modification and reversal of portions of a final decree entered by the District Court, Water Division No. 5, State of Colorado, in three consolidated cases, which decrees in essence approved applications by the Cities for changes in decreed water rights. We vacate the judgment and remand the case to the water court with directions.

## A

In June and December of 1985, the Cities filed three separate petitions in the water court applying for changes in certain water rights previously decreed to the Cities in connection with a transmountain water diversion project denominated "The Homestake Project." [1] In case No. 85CW151, the Cities requested approval of alternate points of diversion for water rights to East Cross Creek, West Cross Creek, Cross Creek, and Fall Creek.[2] In case No. 85CW582, the Cities requested approval of alternate points of diversion for water rights to four additional creeks. In case No. 85CW583, the Cities requested orders approving a change in the place of storage for a portion of a reservoir and making absolute a certain conditional storage right.[3]

The Upper Eagle Regional Water Authority and the Vail Valley Consolidated Water District filed objections to the Cities' petitions in case No. 85CW151, asserting that the requested changes would result in injury to their water rights.[4] The Colorado

---

1. Various stages of the progress of this project have previously been reviewed by this court. *See In re Application for Water Rights of the City of Aurora,* 731 P.2d 665 (Colo.1987); *Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.,* 148 Colo. 173, 365 P.2d 273 (1961).

2. Other issues in case No. 85CW151 were resolved by an order of partial summary judgment entered by the water court and are not pertinent to this appeal. A description of the water rights involved in this appeal are attached as Appendix A.

3. The issues in case No. 85CW583 were resolved by means of a partial summary judgment order and have not been appealed.

4. The two parties also raised additional issues, and Vail Valley Consolidated Water District also filed statements of opposition in case Nos. 85CW582 and 85CW583. Both of these parties subsequently withdrew their statements of opposition.

Mountain Club and the Holy Cross Wilderness Defense Fund, hereinafter termed "the objectors," filed a joint statement of opposition in case Nos. 85CW582 and 85CW583 alleging that interests of their members would be injured if the Cities' requests were granted.[5]

On March 28, 1986, the objectors filed a motion to consolidate the three cases, Nos. 85CW151, 85CW582 and 85CW583, and also filed a statement of opposition in case No. 85CW151. They argued in their statement of opposition that in *Sierra Club v. John Block*, 622 F.Supp. 842 (D.Colo.1985), *vacated sub nom. Sierra Club v. Yeutter*, 911 F.2d 1405 (10th Cir.1990), the United States District Court for the District of Colorado ruled that "federal reserved water rights exist" in the Holy Cross Wilderness Area, within which the Homestake Project is located; that the changes sought by the Cities would injure those federal reserved water rights; that provisions of federal legislation pertaining to wilderness areas in Colorado, particularly the Act of December 22, 1980, Pub.L. No. 96–560, § 102(a)(5), 94 Stat. 3265–66 (1980) (codified at 16 U.S.C. 1132 (1988)) (hereinafter the Wilderness Act),[6] relied upon by the Cities as creating an exemption from federal regulation of the Holy Cross Wilderness Area do not apply to the Cities' water rights; and that the objectors' members "have an interest in and beneficially use the federal reserved water rights which will be injured

by the granting of the [Cities'] requests." The objectors further asserted that their members were entitled to the use of certain in-stream flow water rights of the Colorado Water Conservation Board (the Conservation Board) and that those rights would be adversely affected if the Cities' requests were granted.[7] The three cases were consolidated on May 10, 1986, and a hearing on the Cities' applications commenced May 24, 1988.

On August 10, 1988, the water court entered a decree in essence approving the Cities' applications. Its thirty-four page opinion contains extensive and detailed findings of fact and conclusions of law. The opinion describes the factual issues in two categories: "[W]hether the original decree for Homestake Project is void ... due ... to inaccurate descriptions of the intended points of diversion ... and (2) whether the [Cities'] request for approval of alternate points of diversion constitutes an expansion of the project or would cause injury to other water users or other water rights...."

The water court determined that the original and amended decrees were not void and that the requested changes would not constitute an expansion of the original project even though the proposed alternate points of diversion are located up-stream from the originally decreed points of diversion. The water court expressed its approval and adoption of what it described as

5. The objectors raised other objections which are not here pertinent.

6. The parties refer to this statute as "the Colorado Wilderness Act." Title I of Pub.L. 96–560 refers to land in Colorado; the statute also classifies portions of several other states as national wilderness areas.

7. The Conservation Board intervened in the action subsequent to the filing of the objectors' statement of opposition, asserting that it was entitled to participate to the extent in-stream water rights owned by the State of Colorado might be affected. The Conservation Board withdrew its opposition to the Cities' applications after entering into a stipulation with the objectors, which stipulation contains the following pertinent language:

    3. In order to conserve resources and focus consideration on the central issues raised

by [the objectors] in their Statement of Opposition—whether the Court had jurisdiction to enter the original Homestake decree and whether a change in diversion points may injure federal reserved rights—[the objectors] have agreed to, and do hereby, withdraw their claim that a change in diversion points will injure state instream flow rights.

    4. [The Conservation Board] has agreed to withdraw its Statement of Opposition. Simultaneously with the filing of this Stipulation, [the Conservation Board] is submitting to the Court a motion to withdraw its Statement of Opposition.

    5. Neither the withdrawal by [the Objectors] of their claim of injury to state instream flow rights nor the withdrawal by [the Conservation Board] of its Statement of Opposition constitutes an admission with respect to the merits of the issue of injury to instream flow rights.

an "administrative interpretation" by the United States Forest Service that under provisions of the Wilderness Act the Homestake Project must be governed by rules applicable to non-wilderness national forest lands, but concluded that the Wilderness Act presented no obstacle to the Cities' applications. Those determinations have not been appealed.

Observing that reserved federal water rights and minimum in-stream flow water rights of the Conservation Board exist in the area, the water court expressly noted that the United States did not protest the Cities' applications and that the Conservation Board had withdrawn its opposition thereto. The water court found that the requested alternate points of diversion "will not result in material injury to plant or animal life or to visual and aesthetic values of the wilderness, and will not materially injure other water users and water rights." The water court also stated that "[i]n making this ruling" it had taken into consideration the facts that "the [Conservation Board] has certain minimum stream flow water rights and that the U.S. Forest Service has conditioned [the Cities'] permits on certain bypass requirements." The water court then entered a decree granting the Cities' applications and containing the following provision:

> The requested changes in water rights by the addition of alternate points of diversion as requested by [the Cities] will not result in material injury to any water right or water user and are approved, subject to the condition that the decreed rights of the [Conservation Board] in the intervening reaches on Cross Creek, West Cross Creek, East Cross Creek, and Fall Creek, be administered as senior to [the Cities'] rights within such intervening reaches.

### B

■ On appeal the Cities request resolution of the following three issues: (1) whether the water court erred in determining that federal reserved water rights exist in the Holy Cross Wilderness Area; (2) whether the water court erred in determin-

ing that the Wilderness Act did not render the Cities' water rights completely exempt from federal regulation; and (3) whether the water court erred in imposing the requirement that certain water rights of the Conservation Board be administered as senior to the water rights of the Cities. The objectors argue that the first two of these questions are not properly postured for resolution by this court because the Cities prevailed on those issues at trial. The objectors have not challenged the water court's rulings thereon. We agree that in this posture any decision by this court on those issues would be inappropriate. *See In re Interrogatories by the Governor*, 126 Colo. 48, 245 P.2d 1173 (1952); *Cameron v. Carroll Co.*, 138 Colo. 432, 334 P.2d 748 (1959). Furthermore, in view of the water court's final determination that any federal reserved rights in the Holy Cross Wilderness Area would not suffer injury as the result of the requested changes, those portions of the water court's opinion discussing the nature and extent of those federal rights and construing the Wilderness Act are not essential to its ultimate conclusion.

### C

■ Water courts exercise broad authority pursuant to section 37–92–305, 15 C.R.S. (1990), with respect to applications for changes of water rights. That statute provides in pertinent part as follows:

> (3) A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right.... If it is determined that the proposed change or plan as presented in the application ... would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect.

§ 37–92–305(3), 15 C.R.S. (1990). It is not disputed that a change in a point of diversion constitutes a change of water right. § 37–92–305(5), 15 C.R.S. (1973); *Rominiecki v. McIntyre Livestock Corp.*, 633 P.2d 1064 (Colo.1981). An applicant requesting a change of water right assumes the burden of establishing that the proposed change will not result in injury to other holders of water rights on that body of water. § 37–92–305(3), 15 C.R.S. (1990); *Orr v. Arapahoe Water and Sanitation Dist.*, 753 P.2d 1217 (Colo.1988); *Rominiecki v. McIntyre Livestock Corp.*, 633 P.2d 1064; *Weibert v. Rothe Bros.*, 200 Colo. 310, 618 P.2d 1367 (1980). Once an applicant has established a prima facie case of no injury, the burden shifts to any objector to establish that injury to an extant water right might result. *In re Application for Water Rights*, 688 P.2d 1102 (Colo. 1984); *CF & I Steel v. Rooks*, 178 Colo. 110, 495 P.2d 1134 (1972).

▮▮▮ Section 37–92–305(3) provides that a requested change of water rights "shall be approved" if no injury shall occur as the result of such change. The statute also provides that any party may propose conditions to a decree if the water court determines that a proposed change "would cause such injurious effect." These legislative mandates further one major purpose of the statutes governing the administration of Colorado's complex laws of water rights: encouragement of productive use of decreed rights. *See Colorado River Water Conservancy Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976); *Fellhauer v. People*, 167 Colo. 320, 447 P.2d 986 (1968). If a holder of a decreed water right can put the water to better use by obtaining an amendment to the decree, such conduct should be encouraged if the proposed change will cause no injury to other users or owners of water rights.

▮▮▮ However, it is also clear that water courts exercise broad authority to provide all holders of water rights with protection of their interests in proceedings initiated to change decreed water rights. *See Hallen-*

*beck v. Granby Ditch & Reservoir Co.*, 144 Colo. 485, 357 P.2d 358 (1960). The General Assembly has recognized the importance of assuring protection to all holders of decreed rights by providing expressly that any party to such proceeding may suggest conditions for incorporation into a final decree if such party's water rights might be adversely affected by the decree. Section 37–92–305(3), 15 C.R.S. (1990). In this case, no party requested the water court to impose the condition challenged by the Cities.

To establish their prima facie case of no injury, the Cities relied primarily upon expert testimony by Kerry Sundeen, a hydrologist. Sundeen concluded, on the basis of studies conducted by the Colorado Division of Wildlife and by the United States Forest Service, that the changes requested by the Cities would result in no material injury to the in-stream flow rights of the Conservation Board. Noting that a slight reduction in the minimum amount of in-stream water flow would result on three of the four creeks involved, Sundeen also testified that the proposed alternate points of diversion could actually improve the in-stream flow conditions.

Although Sundeen's testimony was not directly contradicted by other witnesses, the objectors argue that portions of documentary evidence relied upon by Sundeen indicate that under some circumstances the proposed changes in points of diversion could result in injury to in-stream water rights of the Conservation Board. The Cities suggest that the water court's conclusion that the proposed changes would not cause injury to any water rights or water users must be viewed as a conclusion that any such evidentiary issues were resolved against the objectors' position. The water court's opinion does not resolve the tension between its conclusions regarding lack of injury and its ultimate imposition of the challenged provision, nor does it clarify the latent ambiguity in the finding that the Conservation Board's ownership of water rights was considered by the water court. In view of the fact that the evidence is subject to disparate evaluations, further findings clarifying the basis for the inclu-

sion of this provision in the final decree are necessary for adequate appellate review of the water court's judgment. C.R.C.P. 52; *see Murray v. Rock,* 147 Colo. 561, 364 P.2d 393 (1961). We therefore deem it appropriate to vacate the judgment of the water court and remand the proceedings to that court to permit it to indicate in its final decree the basis for its inclusion of the challenged provision.

D

For the foregoing reasons, the judgment of the water court is vacated and the case is remanded to the water court for further proceedings consistent with this opinion.

ERICKSON, J., specially concurs.

VOLLACK, J., does not participate.

## APPENDIX A

The water rights in question in this appeal, as originally decreed in 1962, are described as follows:

| Stream or Other Source of Supply | Point of Diversion | Amount Cubic Feet Per Second of Time |
|---|---|---|
| East Cross Creek | N74° 24'E 26649 ft. to NW cor 6–7S–80W | 130 |
| West Cross Creek | N83° 38'E 36256 ft. to NW cor 6–7S–80W | 200 |
| Cross Creek | N83° 05'E 35064 ft. to NW cor 6–7S–80W | 300 |
| Fall Creek | S82° 55'E 12812 ft. to NW cor 6–7S–80W | 260 |
| Unnamed Creek (tributary to Cross Creek) | S86° E 35177 ft. to NW cor 6–7S–80W | 60 |
| Peterson Creek | S64° 05'E 6822 ft. to NW cor 6–7S–80W | 50 |
| Unnamed Creek (tributary to Homestake Creek) | S76° 45'E 10572 ft. to SW cor 18–7S–80W | 50 |
| Whitney Creek | N81° 42'E 13489 ft. to SW cor 18–7S–80W | 80 |

---

Justice ERICKSON specially concurring:

## I.

In 1968, water rights were decreed to the Homestake Project on East Cross Creek, West Cross Creek, Cross Creek, and Fall Creek. Homestake Project is operated by the cities of Aurora and Colorado Springs (Applicant). Although the Homestake Project is located in the Holy Cross Wilderness Area, the Colorado Wilderness Act adopted in 1980, P.L. 96–560, 94 Stat. 3265, unambiguously contains a narrow exception for the development of the Homestake Project II. Subsequent to the granting of water rights for the Homestake Project, the Colorado Water Conservation Board acquired minimum instream flow rights on three of the four streams.

In December 1985, consistent with the exemption provided in the Colorado Wilderness Act, and pursuant to § 37–92–302, 15 C.R.S. (1990), Aurora and Colorado Springs filed an application for a change of water rights by addition of alternate points of

diversion for the four conditional rights of the Homestake Project.

The Holy Cross Wilderness Defense Fund and the Colorado Mountain Club filed objections to the application for a change of points of diversion. The objectors alleged that as users of the wilderness area, they would be injured by the reduction of the instream flows resulting from the relocation upstream of the points of diversion. The objectors alleged injury both to plants and animals caused by the change in water availability, and to the visual or aesthetic effects caused by the lowering of the water levels.

The Colorado Water Conservation Board (Conservation Board) filed a motion to intervene and a statement of opposition in the proceeding asserting that it owned several instream flow water rights that may be affected by the granting of the application. Subsequently, pursuant to a stipulation between the Conservation Board and the other objectors, the water court issued an order granting the Conservation Board's motion to withdraw its statement of opposition to the application. The motion to withdraw states that the Conservation Board withdrew because injury to state instream flows rights would not be an issue in the case. The stipulation, however, states the withdrawal of the Conservation Board does not constitute an admission with respect to the merits of the issue of injury to instream flow rights.

During the course of the hearing by the trial court, the objectors argued that injury would occur to the federal reserved rights, the Conservation Board's instream flow rights, and to the members of the public in general who use the wilderness area. The applicant admitted that after changes in points of diversion, the flows in the Cross Creek, East Cross Creek, and Fall Creek would be less than the amounts decreed to the Conservation Board in certain reaches of the streams. The water court determined the evidence before it demonstrated water levels will be reduced by up to nine inches in some intervening reaches of the streams. However, the water court concluded no material injury would result from the change in points of diversion.

The water court ultimately granted the application to change the points of diversion subject to the condition that the decreed rights of the Conservation Board in the intervening reaches on the streams be administered as senior to the applicant's rights within such intervening reaches. The applicant contends on appeal that the water court erred in imposing the condition of seniority to protect the Conservation Board's instream flow right.

## II.

The applicant claims the water court may only impose conditions on a change in points of diversion if the water court first determines an injury will occur as a result of the change. The applicant thus claims that because the water court found no material injury would result from the change in points of diversion, the water court could not condition the water rights of the applicant.

The applicant misinterprets the duties and responsibilities of the water court. Section 37–92–305(3), 15 C.R.S. (1990), provides that if the water court determines the proposed change as presented in the application would injure other water interests, the water judge shall afford an opportunity for the proposal of necessary conditions to prevent the injury. The statute does not, however, require injury to be found before a water judge may impose conditions on the application. In fact, sections 37–92–304(5) & (6), 15 C.R.S. (1990), specifically provide that any decision of the water judge dealing with a change of water right may contain any other provision the water judge deems necessary to protect other water interests.

In *Mannon v. Farmers' High Line Canal & Reservoir Co.*, 145 Colo. 379, 390–91, 360 P.2d 417, 423 (1961), we reversed a water court's denial of a change of right holding the water court had a duty to consider possible terms and conditions that would prevent the injurious effects of granting the application. In *Rominiecki v. McIntyre Livestock Corp.*, 633 P.2d 1064,

1069 (Colo.1981), we held the trial court had authority to consider inclusion of any conditions, in addition to those proposed by the applicant, which are necessary, based on the evidence in the record, to prevent injury to other water interests. In *Shawcroft v. Terrace Irrigation Co.*, 138 Colo. 343, 350, 333 P.2d 1043, 1046–47 (1958), we stated few changes in points of diversion of large quantities of water, for long distances, can be made without substantial injury to other water interests, and thus the utmost care and scrutiny should be exercised to guard against such injury.

The water court could properly find that no material injury would result from the planned diversions, and could still condition the change in points of diversion with the requirement that the Conservation Board's rights be given senior priority. Because the water court did not articulate its rationale for requiring the condition of seniority for the Conservation Board's instream flow rights, the decree and order of the water court are not adequate for appellate review. Accordingly, I agree that the findings and conclusions must be vacated and the case remanded to the water court for more specific findings and conclusions regarding the Conservation Board's seniority of instream flow rights.