No. 9883.

THE BACA DITCH COMPANY ET AL. *v.* COULSON.

Decided May 2, 1921.   Rehearing denied June 6, 1921.

Proceeding to change the point of diversion of decreed water rights.  Change allowed.

*Reversed.*

1. WATER RIGHTS—*Change of Point of Diversion—Burden of Proof.*
   In a proceeding to change the point of diversion of decreed water rights, the burden is upon petitioner to establish the fact that the proposed change will work no injury to the vested rights of other appropriators from the stream.

2.     *Change of Point of Diversion—Vested Rights of Others.*  In a proceeding to change the point of diversion of ·decreed water rights, if it appear that such change cannot fail· to adversely affect junior vested rights, it cannot lawfully and properly be allowed.

*Error to the District Court of Las Animas County, Hon. A. C. McChesney, Judge.*

Mr. JESSE G. NORTHCUTT, Mr. EDWARD M. FREEMAN, Mr. FORREST C. NORTHCUTT, for plaintiffs in error.

Mr. A. W. MCHENDRIE, Mr. B. H. SHATTUCK, for defendant in error.

MR. JUSTICE BAILEY delivered the opinion of the court.

APPLICATION was by Coulson to the district court of Las Animas County to change the point of diversion of decreed water rights from the headgates of two small ditches on the Las Animas river to that of one large one, located on the opposite side of that stream, and several miles further down.   The change was allowed by the court.   The several protestant ditch companies allege error and bring the decree here for review.

Coulson acquired by purchase portions of two earlier

priorities, Numbers 10 and 11, in Water District Number 19. The water rights so purchased supplied two ditches, each less than two feet wide and one mile long. It appears that the priorities awarded to the two ditches much more water than ever was or could be carried or used by them. It was sought in these proceedings to divert the entire appropriations to the canal of applicant, which has a carrying capacity of one hundred and fifty second feet of water and is twelve miles long. The protestants contend that this enlarged use, both as to time and quantity, will impair their vested rights as junior appropriators of water out of the Las Animas river for irrigation purposes.

It is established by the evidence, in which there is no substantial conflict, that the two ditches above mentioned are small, located at no point more than a quarter of a mile from the river, and that they were used originally to irrigate not to exceed sixty acres of land. Also that the land under these ditches used at the most but a trifle over half the quantity called for by the decrees, and that the land was first bottom land, which sub-irrigated, sloping to the river, and that excess water used thereon flowed directly and quickly back to the stream. Moreover, that one of the ditches had been out of use for many years, and that the surplus water from all of the above causes remained in or returned to the river and aided in supplying the junior priorities of protestants. It is also established, beyond dispute, that under the change of point of diversion as allowed, the water will be carried to uplands several miles from the river, that there can be but little or no seepage, waste or return water, and if there should be any, it will reach the river below the headgates of the ditches of protestants and therefore can in no way advantage them.

Numerous errors have been assigned, but it will be necessary to consider one matter only, namely, whether petitioner established the fact, the burden under the law to do so being upon him, that the proposed change in point of diversion would work no injury to the vested rights of other appropriators from the stream. In *Cache la Poudre*

*Irr. Co., et al. v. Water Supply & Storage Co.*, 49 Colo. 1, (111 Pac. 610) this court at page 4, said:

"Much stress is laid by learned counsel for appellant on the fact that the referee, in weighing the evidence and making his findings, disregarded the true rule in a proceeding of this kind respecting the burden of proof. They say that this court, in *Fort Lyon Canal Co. v. Chew*, 33 Colo. 392, which involved a temporary exchange or loan of water rights, said that the burden of proof rests upon the one who asserts the right to make or enjoy the same, and while the present proceeding is one concerning the right to change the point of diversion, the same principle should apply. In this contention, we think appellants are right. One who seeks to have made a change in the point of diversion of his ditch should make it appear to the court that the same will not injuriously affect the vested rights of others, although in a sense this may involve the proof of a negative."

The trial court found that the amount of seepage or return water was twenty-seven per cent. The record is barren of testimony to support such finding. All of the witnesses who estimated the amount of seepage fixed it at from fifty to seventy-five per cent. One witness said the amount of seepage would be "large." The testimony upon the question of seepage is clear and uncontradicted, and shows conclusively that it was largely in excess of twenty-seven per cent.

There is no serious conflict in the evidence on the matter of a greatly enlarged use resulting from the proposed change in the point of diversion. It appears that the land to which the water was originally applied sub-irrigated, and that when water was used upon it through the ditches, less than one-half of the appropriation was needed, and that after the water was sold, crops were grown without any irrigation at all. It is manifest, therefore, that to transfer the full amount of the appropriations and apply the water to uplands some distance from the river, must naturally adversely affect junior appropriators, whose headgates are

above the intake of the ditch of the petitioner, particularly since it appears that there is in each season a shortage of water in the stream, the same being frequently insufficient to supply decreed rights.

In *Ft. Collins M. & E. Co. v. Larimer & Weld Irr. Co.*, 61 Colo. 45, (156 Pac. 140,) there is a striking similarity of facts. It was there proposed to change the point of diversion of water used upon bottom lands through a small ditch close to the river to other lands not so favorably situated for quickly restoring waste and return waters to the stream. On page 53 this court said:

"It is well settled in this jurisdiction that the law which is read into every decree awarding priorities, limits it to sufficient for the purposes for which the appropriation was made, and does not authorize a waste or excessive use regardless of the fact that the maximum amount awarded may, at times, be more than is needed for the purposes for which it was decreed. (Citing cases.) It is likewise well settled in this jurisdiction that the appropriators, from a natural stream having decreed priorities, are entitled to have the conditions existing upon the stream, at the date of their appropriations, substantially maintained, unless the change sought will not materially injure them. (Citing cases.) The evidence discloses, and the trial court concedes, that the changed conditions will result in an enlarged use, both as to amount and time, for which reason this court has heretofore held that in such cases the change should not be granted for any amount, unless upon terms as to time and amounts, so it will not injure the rights of juniors, if a case where this can be done, otherwise it should be denied *in toto*. (Citing cases.)"

Since the actual amount of seepage and return water was, as matter of fact under original conditions, greater than twenty-seven per cent, as fixed by the court, and an enlarged use, both in point of time and amount, would result from the proposed change, in the very nature of things such change could not fail to adversely affect junior vested rights, and therefore, under the settled law of this juris-

diction, could not lawfully and properly be allowed.

It is contended that the water involved has as matter of fact been diverted at the new point for several seasons, and that no injury to junior appropriators has resulted from such change. The record fails to support this contention. Indeed, the proposed change, through increased flow, greater evaporation, loss of seepage and return waters and more continuous and constant use, would of necessity deprive junior appropriators of water to which they were entitled. This being established, the change, under our authorities, should have been denied.

The judgment of the trial court is reversed and the cause remanded, with directions to dismiss the petition.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE ALLEN, sitting for MR. JUSTICE BURKE, concur.