## No. 79SA399

**Emanuel Weibert, Jeris A. Danielson, State Engineer, and James R. Clark, Division Engineer, for Water Division No. 1 v. Rothe Brothers, Inc., and City and County of Denver, acting by and through its Board of Water Commissioners, Bijou Irrigation District and Bijou Irrigation Company**

(618 P.2d 1367)

Decided August 5, 1980. Rehearing denied September 22, 1980. Opinion modified and as modified rehearing denied November 10, 1980.

312

Musick, Williamson, Schwartz, Leavenworth & Cope, P.C., Stephen T. Williamson, John B. Houtchens, for Emanuel Weibert.

J. D. MacFarlane, Attorney General, Dennis M. Montgomery, Assistant, for State Engineer and Division Engineer.

David J. Miller, James A. Gustafson, for Rothe Brothers, Inc.

Wayne D. Williams, Michael L. Walker, for City and County of Denver.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

Upon the application of Rothe Brothers, Inc. (Rothe) the water court issued a judgment and decree which awarded a water right for a new irrigation well, granted a change of point of diversion for an existing irrigation well, and approved a plan for augmentation. The state engineer and Emanuel W. Weibert[1] appealed. We reverse.

Rothe filed an application in the water court on February 10, 1977, for a water right for a proposed well (Rothe well) in the amount of 1.78 cfs for irrigation purposes. The water was to be used to irrigate 130 acres of land (Rothe land) surrounding the well site near the South Platte River in Morgan County. In that application Rothe also sought approval of a plan for augmentation under which Rothe would commit 15 private rights of Riverside Reservoir & Land Co. for use to replace to the South Platte River the water to be diverted by the Rothe well.

Thereafter, Rothe filed an amended application, requesting additional relief. Rothe sought a change of point of diversion and place of use to permit diversions to be made from the Rothe well for application to the Rothe land based upon the water right (Furrow water right) decreed to another well (Furrow well) on August 19, 1974, in the amount of 1.11 cfs, for irrigation purposes, with the appropriation date of April 1, 1937. The Rothe well is approximately 30 miles downstream from the Furrow well, with reference to the South Platte River. The Furrow water right had been used to irrigate 130 acres of land surrounding the Furrow well. The Furrow well was to be plugged and abandoned if the change in point of diversion were granted.

The water court found that the change in return flow pattern incident to change of the point of diversion of the Furrow right to the Rothe well would reduce flow in the South Platte River by 55 acre feet between November 17 and June 7 of each year. As we interpret the decree of the water court, the following relief was granted: (1) The point of diversion of the Furrow water right was changed to the Rothe well, but diversions were

---

[1] Weibert is the owner of a well near Rothe's new irrigation well.

limited to 212 acre feet per annum;[2] (2) 0.67 cfs was decreed to the Rothe well for irrigation purposes, with an appropriation date of April 7, 1978 (Rothe water right), but diversions were limited to 55 acre feet per annum;[3] (3) the Rothe land was designated as the intended place of use of the Furrow water right and the Rothe water right; (4) Rothe was required to make available to the state engineer 55 acre feet of surface water per annum from 15 private rights of Riverside Reservoir & Land Co. in order to meet any valid call of a prior appropriator;[4] and (5) the Furrow well was required to be closed permanently.

The appellants assert, and we agree, that the water court erred in three principal respects: (1) by ruling that the doctrine of res judicata prevented consideration of historical use of the Furrow well from the April 1, 1937, appropriation date to the August 19, 1974, adjudication date of the Furrow water right, for the purpose of determining whether the change of point of diversion would adversely affect rights of others; (2) by refusing to consider evidence concerning the Riverside Reservoir & Land Co. rights for the purpose of determining the adequacy of the plan for augmentation; and (3) by failing to include in the decree the provision required by section 37-92-304(6), C.R.S. 1973 (1979 Supp.), retaining jurisdiction to reconsider the decree on the question of injury to the vested rights of others.

## I.

The application for change of point of diversion and change in place of use with respect to the Furrow water right constitutes an application for a "change of water right." Section 37-92-103(5), C.R.S. 1973.[5] The

---

[2] Although the decree does not specify the source of this limitation, and the exhibits were not made part of the record in this court, the briefs in the trial court indicate that 212 acre feet is the amount of water which must be applied annually to grow pasture grass on the Furrow land. We may infer that the trial judge concluded that the decree for the Furrow water right established that the Furrow water right had been used in an optimum manner and as the sole source of water to produce pasture grass on the Furrow land. At a pumping rate of 1.11 cfs approximately 93 days pumping for 24 hours a day would be necessary to achieve this production.

[3] We infer, although in absence of the exhibits the record does not establish, that 267 (i.e., 212 55) acre feet must be applied to the Rothe land annually to grow corn, the crop typically grown in the area of the Rothe land. The decree contains no provision to permit the Rothe water right to be exercised out of priority. Rothe has been operating the Rothe well under a temporary plan for augmentation permitting diversions out of priority in return for supply of replacement water through contracts between Rothe and Groundwater Appropriators of the South Platte River Basin, Inc. (GASP). That temporary plan was approved pursuant to section 37-92-307(1)(b), C.R.S. 1973, repealed by Colo. Sess. Laws 1977, ch. 483, section 6 at 1704. It appears from the briefs that Rothe plans to make out-of-priority diversions based on the Rothe water right by utilization of replacement water obtained through GASP contracts, under an arrangement with the state engineer. *See* section 37-92-501.5, C.R.S. 1973 (1979 Supp.). The arrangement with respect to GASP replacement water is not part of the plan for augmentation approved by the water court.

[4] The findings indicate that this condition should be limited to the period from November 17 to June 7 when the diversions based upon the Furrow water right will cause loss to the river. The decretal language is not so limited.

[5] "'Change of water right' means a change in the type, place, or time of use, a change in the point of diversion . . . ." Section 37-92-103(5), C.R.S. 1973.

application to commit 15 private rights of Riverside Reservoir & Land Co. for use as replacement water constitutes a "plan for augmentation." Section 37-92-103(9), C.R.S. 1973 (1979 Supp.).[6]

The standard by which an application for a change of water right or for approval of a plan for augmentation is to be evaluated is set forth in section 37-92-305(3), C.R.S. 1973, as follows:

"A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. If it is determined that the proposed change or plan as presented in the application would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect."

The appellants contend that the 212 acre feet per annum transferred to the Rothe well greatly exceeds actual historical diversions from the Furrow well. The appellants urge that to permit diversions to be increased to 212 acre feet per annum at the new point of diversion based on the Furrow water right will injuriously affect others, contrary to section 37-92-305(3), C.R.S. 1973. It is the appellants' position that Rothe has the burden of proving actual historical use of the Furrow well in order to establish that the decreed change of point of diversion and plan for augmentation will not cause such injurious effect. The water court ruled that the original decree was res judicata as to the historical use of the Furrow well during the period beginning with the date of appropriation and ending with the date of the decree awarding the Furrow water right.[7] For this reason it refused to consider any evidence of actual historical use.

## II.

Well-established principles of water law form the background for our consideration of the issues in this case.

 A water right is a property right. *Green v. Chaffee Ditch Co.,* 150 Colo. 91, 371 P.2d 775 (1962); *Farmers Highline Canal &*

---

[6] "'Plan for augmentation' means a detailed program to increase the supply of water available for beneficial use in a division or portion thereof by the development of new or alternate means or points of diversion, by a pooling of water resources, by water exchange projects, by providing substitute supplies of water, by the development of new sources of water, or by any other appropriate means." Section 37-92-103(9), C.R.S. 1973 (1979 Supp.).

[7] The water court did not set forth in its decree an explanation for its determination that the decree awarding the Furrow water right was res judicata as to the annual production of 212 acre feet. We infer that the water court considered the decree to have established continued beneficial use from the date of appropriation to the date of the decree. The exhibits apparently reflected that 212 acre feet of water per annum must be applied to the Furrow land optimally to grow pasture grass, the crop grown on the Furrow land. The court considered that to be the amount which could be, and therefore pursuant to the decree had been, beneficially used. *See* footnote 2.

*Reservoir Co. v. City of Golden,* 129 Colo. 575, 272 P.2d 629 (1954). One of the incidents of a water right is the right to change the point of diversion or place of use. *Green v. Chaffee Ditch Co., supra; Cline v. McDowell,* 132 Colo. 37, 284 P.2d 1056 (1955); *Farmers Highline Canal & Reservoir Co. v. City of Golden, supra.* That right is qualified in that injury to others must not result from the change. *Cline v. McDowell, supra; Farmers Highline Canal & Reservoir Co. v. City of Golden, supra, City of Colorado Springs v. Yust,* 126 Colo. 289, 249 P.2d 151 (1952); *Brighton Ditch Co. v. Englewood,* 124 Colo. 366, 237 P.2d 116 (1951); *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.,* 116 Colo. 589, 183 P.2d 556 (1947); Section 37-92-305(3), C.R.S. 1973. It is the burden of the applicant to show that injury will not result from a proposed change. *E.g., Farmers Highline Canal & Reservoir Co. v. City of Golden, supra; Trinchera Ranch Co. v. Trinchera Irrigation District,* 83 Colo. 451, 266 P. 204 (1928). If the water judge determines that injury will result from the proposed change, the applicant and the persons opposed to the application must be given an opportunity to propose terms or conditions which would prevent the injurious effect. Section 37-92-305(3), C.R.S. 1973; *see City of Colorado Springs v. Yust, supra; Farmers Highline Canal & Reservoir Co. v. City of Golden, supra.*

We have always recognized limitations on the right of the owner of a water right to divert at the full decreed rate at all times. The owner of a water right has no right as against a junior appropriator to waste water, *i.e.*, to divert more than can be used beneficially. *Pulaski Irrigating Ditch Co. v. City of Trinidad,* 70 Colo. 565, 203 P. 681 (1922); *Baca Ditch Co. v. Coulson,* 70 Colo. 192, 198 P. 272 (1921); *Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 P. 37 (1905). Nor may he extend the time of diversion to enable him to irrigate lands in addition to those for which the water was appropriated. *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co., supra; Baca Ditch Co. v. Coulson, supra; Fort Lyon Canal Co. v. Chew, supra; Cache La Poudre Reservoir Co. v. Water Supply & Storage Co.,* 25 Colo. 161, 53 P. 331 (1898). These limitations are read into every water right decree by implication. *Farmers Highline Canal & Reservoir Co. v. City of Golden, supra; Baca Ditch Co. v. Coulson, supra.*

The right to change a point of diversion or type of use with respect to water rights decreed for irrigation purposes is limited to the "duty of water" with respect to the decreed place of use. *Farmers Highline Canal & Reservoir Co. v. City of Golden, supra.* Duty of water is defined in that case as follows:

"It is that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a

maximum amount of such crops as ordinarily are grown thereof. It is not a hard and fast unit of measurement, but is variable according to conditions."
129 Colo. at 584, 272 P.2d at 634. The numerous facts relevant to determination of the duty of water are stated in that same case to include:
"Land characteristics at the place of use are important; location; slope; depth of soil; whether it is loose or close; if underlain with gravel or impervious material; its composition and general adaptability for the growing of irrigated crops; all are taken into consideration. Climate is a feature not to be overlooked, as also are the kinds of crops ordinarily grown thereon and the proportion of the area devoted to each type of crop and the rotation thereof. In fact, every element that concerns or affects the consumption of water in the particular case before the court is to be considered."
*Id. See Trinchera Ranch Co. v. Trinchera Irrigation District, supra.*

The right to change a point of diversion or place of use is also limited in quantity and time by historical use. *See City of Westminster v. Church,* 167 Colo. 1, 445 P.2d 52 (1968); *Hoehne Ditch Co. v. Martinez,* 71 Colo. 428, 207 P. 859 (1922); *Baca Ditch Co. v. Coulson, supra.* Historical use could be less than the optimum utilization represented by the "duty of water" in the instant case because the Furrow well could not physically produce at the decreed rate on a continuing basis, the well had been used historically only to supplement other rights, or for other reasons.[8] "Historical use" as a limitation on the right to change a point of diversion has been considered to be an application of the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations. *City of Westminster v. Church, supra, citing Enlarged Southside Irrigation Co. v. John's Flood Ditch Co., supra, Green v. Chaffee Ditch Co., supra, and Farmers Highline Canal & Reservoir Co. v. City of Golden, supra.*

Where expansion of use is the injury asserted, establishment of historical use is the burden of the applicant. *See City of Colorado Springs v. Yust, supra; Farmers Highline Canal & Reservoir Co. v. City of Golden, supra; Trinchera Ranch Co. v. Trinchera Irrigation District, supra.*

## III.

The water judge held that the doctrine of res judicata barred any inquiry into historical use of the Furrow water right prior to August 19,

---

[8] We have recognized situations in which years of nonuse based upon damage or destruction of a diversion and distribution system would not limit future diversion. *Flasche v. Westcolo. Co.,* 112 Colo. 387, 149 P.2d 817 (1944). Such a situation is not involved here, so we need not consider the interrelation of such cases and those cases limiting future diversions on the basis of historical use.

1974, the date of adjudication of that water right.[9] We do not agree.

Res judicata is applicable only when there exists identity of subject matter, cause of action, parties to the action, and capacity in the persons for which or against whom the claim is made. *City of Westminster v. Church, supra.* In that case we quoted from *Pomponio v. Larsen,* 80 Colo. 318, 321, 251 P. 534, 536 (1926), as follows:

"The best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, according to the authorities, is whether the same evidence would sustain both, and if it would, the two actions are the same, and this is true although the two actions are different in form . . . ." *See also Green v. Chaffee Ditch Co., supra.*

A decree in a water adjudication confirms that steps have been completed to effect an appropriation. *Cresson Consolidated Gold Mining and Milling Co. v. Whitten,* 139 Colo. 273, 338 P.2d 278 (1959). One of those steps is application of water to beneficial use. Continuation of beneficial use of the amount of water which would be produced by diversions at the claimed rate from the date of initiation of the appropriation to the date of the decree is not an issue in a water adjudication proceeding. *See Four Counties Water Users Ass'n v. Colorado River Water Conservation District,* 159 Colo. 499, 414 P.2d 469 (1966). Often the period and pattern of use are not known with certainty at the time a water right is adjudicated. We have long recognized that there is read into every decree awarding priorities the implied limitation that diversions are limited to those sufficient for the purposes for which the appropriation was made, regardless of the fact that such limitation may be less than the decreed rate of diversion. *Hoehne Ditch Co. v. Martinez, supra; Baca Ditch Co. v. Coulson, supra.* It follows that historical use was not in issue in adjudication of the Furrow water right, and the decree awarding that right is not res judicata as to historical use. It was error to refuse to consider evidence of historical use.

## IV.

Rothe's plan for augmentation consists of making available 15 rights in Riverside Reservoir & Land Co. to be used by the state engineer to satisfy valid calls by prior appropriators. The appellants sought to develop evidence concerning those rights, but were not permitted to do so. We concluded that this was error.

A plan for augmentation is to be approved by the water judge based on the same criterion involved in evaluating an application for change of water right, *i.e.,* approval is required.

---

[9] The water judge appears to have concluded that the "duty of water" for the Furrow lands established the upper limit for diversions based on the Furrow water right. *See* footnote 2.

"if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right."
Section 37-92-305(3), C.R.S. 1973.

The purpose of committing the 15 rights in Riverside Reservoir & Land Co. to the plan for augmentation was to compensate for 55 acre feet which the trial judge found would be lost to the river between November 17 and June 7 as a result of a change in return flow pattern upon implementation of the change of water right with respect to the Furrow well.

■ In order to determine the adequacy of the plan to accomplish its intended purpose, it is necessary to consider the adequacy of the replacement water rights. Section 37-92-305(8), C.R.S. 1973 (1979 Supp.). The trial court should have allowed evidence with respect to the replacement water, including the amount and timing, to be made available by exercise of the Riverside Reservoir & Land Co. rights. It then should have determined the adequacy of the plan for augmentation on the basis of the facts and appropriate legal standards. *See* section 37-92-305(3), (8), C.R.S. 1973 (1979 Supp.).

## V.

■ Finally, the appellants urge that the trial court should have included in the decree the provisions prescribed in section 37-92-304(6), C.R.S. 1973 (1979 Supp.), making the approval subject to reconsideration by the water judge on the question of injury to vested rights of others.[10] Rothe agrees that this is required but contends that paragraph 39 of the trial court's judgment and decree satisfies the requirement. That paragraph provides:

"39. This Court retains jurisdiction of this Decree for the purpose of providing an immediate hearing to review the validity of a call, or requirement for providing replacement water or any question as to the administration of the plan of augmentation herein approved."

---

[10] "37-92-304. *Proceedings by the water judge.* (6) Any decision of the water judge as specified in subsection (5) of this section dealing with a change of water right may, and in the case of a plan for augmentation shall, include the condition that the approval of such change or plan shall be subject to reconsideration by the water judge on the question of injury to the vested rights of others for such period after the entry of such decision as is necessary or desirable to preclude or remedy any such injury. the [sic] water judge shall specify his determination as to such period in his decision, but the period may be extended upon further decision by the water judge that the non-occurrence of injury shall not have been conclusively established. Any decision may contain any other provision which the water judge deems proper in determining the rights and interests of the persons involved. All decisions of the water judge, including decisions as to the period of reconsideration and extension thereof, shall become a judgment and decree as specified in this article and be appealable upon entry, notwithstanding conditions subjecting them to reconsideration on the question of injury to the vested rights of others as provided in this subsection (6)." Section 37-92-304(6), C.R.S. 1973 (1979 Supp.).

It makes no reference to the criterion of injury to the vested rights of others and accordingly is not adequate to satisfy section 37-92-304(6), C.R.S. 1973 (1979 Supp.). An appropriate revision consistent with that statutory requirement should be included in the decree upon remand.

We reverse the judgment and decree of the water court and remand for further proceedings consistent with this opinion.

CHIEF JUSTICE HODGES does not participate.