2012 CO 71

**Ralph L. ARCHULETA, as Trustee of the Ralph L. Archuleta Living Trust, Plaintiff–Appellant/Cross–Appellee,**

v.

**Theodore D. GOMEZ, Defendant–Appellee/Cross–Appellant.**

No. 12SA47.

Supreme Court of Colorado, En Banc.

Dec. 3, 2012.

**484**

Max I. Exline, Pueblo, Colorado, Attorney for Plaintiff–Appellant/Cross–Appellee.

Worley Law Firm, LLC, Henry D. Worley, Colorado Springs, Colorado, Attorney for Defendant–Appellee/Cross–Appellant.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 This appeal from a judgment by the Water Court for Water Division No. 2 follows our remand in the case of *Archuleta v. Gomez*, 200 P.3d 333 (Colo.2009).[1] The plaintiff in the underlying case is Ralph L. Archuleta as Trustee for the Ralph L. Archuleta Living Trust[2]; the defendant is Theodore D. Gomez.

¶ 2 This adverse possession dispute is between neighbors over legal interests in water and easement rights for three ditches diverting water from the Huerfano River in the Arkansas River Basin. After conducting additional evidentiary proceedings, as we directed in our first decision in this case, the water court found that Gomez had adversely possessed Archuleta's deeded legal interests in the Archuleta Ditch and Manzanares Ditch No. 1, but it also found that Gomez had not adversely possessed Archuleta's deeded legal interest in Manzanares Ditch No. 2.

¶ 3 The Archuleta Ditch extends across Gomez's upper (westernmost) parcel of irrigated land but does not reach Gomez's nonadjacent lower parcel or Archuleta's parcel, which lies immediately to the east of Gomez's lower parcel. Manzanares Ditch No. 1 cuts across the southeastern corner of Gomez's lower parcel and the southern part of Archuleta's parcel. Manzanares Ditch No. 2 runs across the northern part of Gomez's lower parcel and previously extended to the northern part of Archuleta's adjoining parcel until Gomez plowed it under, severing the connection to Archuleta's property.

¶ 4 The water court ordered payment of costs in favor of Gomez but denied Gomez's request for a partial award of attorney fees. The water court enjoined Gomez from interfering with Archuleta's interest in Manzanares Ditch No. 2, and, in an order entered after the time for amending the water court's judgment had run, the water court provided additional details for the injunction, ordering Gomez to reconstruct Manzanares Ditch No. 2 across the northern part of Gomez's lower parcel to Archuleta's property.

¶ 5 We affirm the judgment of the water court in part, concluding that Gomez adversely possessed Archuleta's legal interests in the Archuleta Ditch and Manzanares Ditch No. 1. We reverse the water court's judgment in part, ordering it to enter an injunction for reconstruction of Manzanares Ditch No. 2 and an easement across the northern part of Gomez's lower parcel to Archuleta's adjoining parcel, so that Archuleta will receive the flow of water his legal interest in this ditch entitles him to divert.

## I.

¶ 6 We turn to a discussion of the facts and the law pertinent to this appeal.

---

1. The issues Archuleta raises are:
 I. Whether the trial court erred in finding adverse possession as to two of Archuleta's ditch rights and in denying injunctive relief where it was not shown the rights were continuously consumptively used by Gomez for the applicable time period.
 II. Whether the trial court erred in failing to grant mandatory injunctive relief requiring Gomez to restore the path of the Manzanares Ditch No. 2 to Archuleta's property.
 III. Whether the trial court was precluded by rule 59(j) from finding the defendant was the prevailing party and awarding costs, and if not precluded, whether the trial court erred in finding the defendant was the prevailing party and awarding costs.

The issue Gomez raises on cross-appeal is:
 Whether the water court's denial of Gomez's motion for an award of part of his attorney fees was arbitrary or capricious?
Gomez does not appeal the water court's finding that he did not adversely possess Archuleta's legal interest in Manzanares Ditch No. 2; nor does either party appeal the water court's finding that none of the legal interests in these ditches were abandoned.

2. On January 28, 2011, the water court granted an Unopposed Motion for Substitution of Parties, ordering Ralph L. Archuleta as Trustee for the Ralph L. Archuleta Living Trust substituted in place of Ralph L. Archuleta in his personal capacity. We continue to identify the party as "Archuleta" for the sake of brevity.

## A. Standard of Review

¶ 7 We accept the water court's factual findings on appeal unless they are so clearly erroneous as to find no support in the record. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.,* 256 P.3d 645, 660 (Colo.2011). The sufficiency, probative effect, weight of the evidence, and the inferences drawn therefrom are for the water court to determine, and we will not disturb them on appeal. *Matter of Gibbs,* 856 P.2d 798, 801 (Colo.1993). We review the water court's conclusions of law de novo. *San Antonio, Los Pinos & Conejos River Acequia Pres. Ass'n v. Special Improvement Dist. No. 1 of Rio Grande Water Conservation Dist.,* 270 P.3d 927, 935 (Colo.2011); *S. Ute Indian Tribe v. King Consol. Ditch Co.,* 250 P.3d 1226, 1232 (Colo.2011).

## B. Adverse Possession Water Law Requires Quantification of Historical Beneficial Consumptive Use

¶ 8 In our prior opinion in this case, we held that, to succeed in his adverse possession claim to Archuleta's legal interests in the Archuleta Ditch, Manzanares Ditch No. 1, and Manzanares Ditch No. 2, Gomez must prove by a preponderance of the evidence that, behind the headgate, he—hostile to the owner and under claim of right—notoriously, adversely, exclusively, and continuously made actual beneficial consumptive use of all or a portion of Archuleta's deeded water interests on the Gomez lands for the eighteen-year adverse possession period, not just that he intercepted water from the three ditches belonging to Archuleta's legal interests. *Archuleta v. Gomez,* 200 P.3d at 337, 342, 345.

¶ 9 Quantification of the use Gomez and Archuleta actually made of the deeded interests in dispute is required because the mature limit, scope, and measure of a water right is not equivalent to the flow of water diverted (typically expressed in cubic feet per second (c.f.s.)) but, rather, is the amount of water needed and consumed annually in making beneficial use of the water—in this case, for crop production (typically quantified by number of acre-feet). *See* Daniel S. Young & Duane D. Helton, P.E., *Developing a Water Supply in Colorado: The Role of an Engineer,* 3 U. Denv. Water L.Rev. 373, 384, 379–80 (2000). Diversion of water, by itself, cannot ripen into a water right if the water is not beneficially used. *Archuleta v. Gomez,* 200 P.3d at 343.

¶ 10 We have previously explained the difference between rate of flow and quantification of actual beneficial consumptive use, as follows:

> [P]rior to the modern trend of implementing express volumetric limitations in decrees, most water rights were quantified by a two-part measurement. First, a decree contained a flow-rate of water, in c.f.s., which the owner was entitled to divert from the stream. Second, a decree stated the use to which that diverted water could be put, such as irrigation of crops or municipal uses.
>
> . . . .
>
> With the advent of improved engineering techniques, courts began to utilize another approach to prevent injury to juniors in change proceedings. Under the modern method, courts now translate the petitioner's historical consumptive use into a volumetric limitation stated in acre-feet.

*Farmers High Line Canal & Reservoir Co. v. City of Golden,* 975 P.2d 189, 197–98 (Colo. 1999) (citations omitted).

¶ 11 Stated differently, the flow of irrigation water through a canal into a farm lateral and then applied to an agricultural field results in crop production that involves consumption of an amount of water belonging to the legal interest in the water right; water not consumed in applying a flow of water to a field becomes surface and/or subsurface return flow that is part of the public's water resource available to fulfill other adjudicated water rights, in order of their decreed priority. A diversion flow rate specified in a decree is neither the measure of a matured water right, nor conclusive evidence of the appropriator's need for which the appropriation was originally made. *Burlington Ditch,* 256 P.3d at 665. Indeed, our cases relating to the "duty of water" are founded on this principle—that any given acreage of cropland needs and is limited to a productive amount of water. *Archuleta v. Gomez,* 200 P.3d at

343. The "duty of water" is that measure of water which, by careful management and use, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon—this is not a hard and fast unit of measurement, but varies according to conditions. *Weibert v. Rothe Bros., Inc.*, 200 Colo. 310, 316–17, 618 P.2d 1367, 1371 (1980); *Farmers Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 584, 272 P.2d 629, 634 (1954).

¶ 12 Adverse possession litigation is not the same as an application for change of a water right which requires resume notice to all potentially affected water users on the stream. Nevertheless, quantification of historical beneficial consumptive use is required in an adverse possession case in order to determine whether the adverse possessor has divested the legal interest owner of its right. All prior appropriation water rights are based on need for the water diverted, and need varies with weather conditions, available precipitation, soil type, water demand for crops grown, and other variables that are typically taken into account in a change of irrigation water right case. Into every decree, regardless of the diversion rate stated on the face of the decree, is read the implied limitation that no more water can be diverted than can be used beneficially. *See Weibert*, 200 Colo. at 318, 618 P.2d at 1372.

¶ 13 Thus, in an irrigation right adverse possession case, the "exclusive" and "continuous" proof requirements necessitate both (1) intercepting water within the ditch that belongs to another person's right, at times and in amounts the adverse possessor's crop production requires and (2) placing the intercepted water to an actual beneficial use that results in water consumption for crop production. *Archuleta v. Gomez*, 200 P.3d at 347, 348. The adverse possessor irrigator may have need for additional consumptive use water because, given the junior status of his or her water right, the parcel to be irrigated is "water short," in that the supply of water available under his or her right falls short of that needed for desired crop production.

¶ 14 The General Assembly and our case law declare that the goals of Colorado water law include "optimum use," § 37–92–501(2)(e), C.R.S. (2012), protection against injury to water rights, § 37–92–501(4)(a), C.R.S. (2012), and sustainability, § 37–92–501(4)(a)(I). Hence, the state's policy of water use appropriation and administration does not require a single-minded endeavor to squeeze every drop of water out of surface streams and tributary aquifers; instead, these goals can only be achieved through optimum use, with appropriate regard for all significant factors, including environmental and economic concerns, *Alamosa–La Jara Water Users Prot. Ass'n v. Gould*, 674 P.2d 914, 935 (Colo.1983), and a balancing of land and water resources, *San Antonio, Los Pinos & Conejos River Acequia Pres. Ass'n*, 270 P.3d at 952.

¶ 15 Accordingly, adverse possession water law does not reward wasteful water use, nor does it promote illegal enlargement of the amount of the historical beneficial consumptive use entitlement the legal interest owner possessed. *See Archuleta v. Gomez*, 200 P.3d at 337, 346–47. In an adverse possession water case, the water court must evaluate all relevant circumstances surrounding the rival claimants' use of the contested water rights. *Id.* at 348.

## C. Application to this Case

¶ 16 In the present appeal, Archuleta argues that Gomez did not prove adverse possession of any of his water right interests in the three ditches because "the expert testimony established the irrigation efficiency of the Gomez operation was only 50 percent." Archuleta contends that Gomez did not demonstrate adverse possession because he "did not show he consumptively used all of Archuleta's water" and because Gomez did not prove he "continuously" used Archuleta's water. In making this assertion, Archuleta misconstrues our prior statement in *Archuleta v. Gomez* that Gomez must "demonstrate adverse possession of all or any portion of Archuleta's deeded interests in the adjudicated irrigation water rights." *Id.* at 337. By that wording, we intended to express

that one can adversely possess the flow that the legal interest owner historically diverted but cannot consume more than the legal interest owner consumed. Archuleta's arguments ignore that prior appropriation irrigation law is based on water actually needed for crop production under variable conditions. *See* Young & Helton, *supra,* at 379. Archuleta's contentions conflate application of a flow of water to a field, consumptive use, and return flows based on erroneous logic that Archuleta's legal interests include the right to consume return flows. *See id.* at 379–80 (explaining the relationship between a crop water requirement, irrigation efficiency, and "the total amount of water that needs to be diverted from a water source in order to supply the crop irrigation requirement"). Fifty percent efficiency is typical of crop water consumption in this Arkansas River Basin area, according to Gary Thompson's expert testimony in this case. This mirrors the discussion in the Young and Helton article we cite above:

> The water not consumed by the crop returns to the water source as either surface water runoff or deep percolation through the groundwater system.... [I]f the crop irrigation requirement is 100 acre-feet of water and the farm efficiency is fifty percent, the total amount of water that needs to be delivered to the irrigation system to ensure a full crop water supply is 200 acre-feet.

*See id.* at 380.[3] Return flows from Archuleta's legal interests belong to the public's water resource—not to Archuleta—as part of the supply of water upon which other adjudicated water rights depend. *See Archuleta v. Gomez,* 200 P.3d at 346.

¶ 17 We now turn to the adverse possession and injunction issues in this appeal.

## 1. Gomez Proved Adverse Possession of Archuleta's Legal Interests in the Archuleta Ditch and Manzanares Ditch No. 1.

 ¶ 18 In regard to adverse possession of Archuleta's legal interests in the three ditches, the water court found that Gomez had adversely possessed Archuleta's legal interests in the Archuleta Ditch and Manzanares Ditch No. 1.

¶ 19 Turning to the Archuleta Ditch, faced with conflicting testimony that also involved credibility determinations, the water court found that Gomez had adversely possessed for the eighteen-year statutory period Archuleta's legal interest in that ditch:

> The Archuleta Ditch runs through Gomez's Upper Parcel. It ends at the boundary of Gomez's Lower Parcel.

> The Archuleta Ditch is operated on a 12 day rotation, in which Theodore Gomez has four days. He has used that water right to irrigate the Upper Parcel. It is undisputed that the Archuleta ditch has not extended as far east as the Lower Parcel, or to the Archuleta Property, since at least 1968, if indeed it ever reached. Between 1968 and his death in 1991, Lupe Archuleta was never granted or exercised a turn in the rotation, and no water from the Archuleta Ditch was used on the Archuleta Property during that 18+ year period. Neither Lupe nor Ralph Archuleta ever contributed to the maintenance or repair of that ditch nor has any claim been made that Lupe and Ralph Archuleta's record ownership interest in the Archuleta Ditch was used by others with their permission.

> The question arose as to what benefit Archuleta received from the Archuleta Ditch, priority no. 30. The Court finds that the Archuleta Ditch does not reach the Ralph S. Archuleta property and has not since 1968.

¶ 20 Evidence in the record supports these findings, and we defer to them. Archuleta argued that he had used tail water from Gomez's upper parcel use of the Archuleta Ditch water, alleging that it entered into and comingled with water of Manzanares Ditch No. 2 prior to irrigation on Gomez's lower parcel, from which tail water then traveled east onto Archuleta's adjoining parcel. The water court found that the evidence demon-

---

3. Thus, "return flow" typically consists of two components: (1) surface water runoff (often referred to as "tail water") and (2) water not consumed by crops that has infiltrated the ground.

strated "it would be impossible to receive tail water from the no. 30 (Archuleta Ditch) because it does not reach the Gomez lower parcel." Again, the record supports this finding, and we defer to it.

¶ 21 In regard to Manzanares Ditch No. 1, faced with conflicting testimony that also involved credibility determinations, the water court found that Gomez had adversely possessed for the eighteen-year statutory period Archuleta's legal interest in that ditch. Both Archuleta and Gomez produced multiple witnesses on the question of Archuleta's legal interest in and use of Manzanares Ditch No. 1. The water court found Gomez's evidence to be credible in contrast with Archuleta's evidence, resolving the conflicting testimony in favor of Gomez's adverse possession:

> Mr. Gomez further testified that Lupe Archuleta never used the Manzanares Ditch No. 1 after 1968, and that Ralph Archuleta began using it only in the mid to late 1990's. One of the few things that Ralph Archuleta and Theodore Gomez did agree on was that in the late 1990's, Theodore Gomez found Ralph Archuleta using the Manzanares Ditch No. 1 on at least one occasion, and told Mr. Archuleta that he, Mr. Archuleta, did not own any rights in the ditch, and that he had to quit using it. It appears to the Court this confrontation would have occurred at a much earlier time if Mr. Archuleta had been using the ditch which leads the Court to find that Archuleta was not using it.

¶ 22 The water court then turned to the rotation agreement recorded in 1984 among parties purporting to have a legal interest in Manzanares Ditch No. 1. While the rotation agreement included Gomez, it did not include Archuleta. The water court found that if "Lupe Archuleta had been making even sporadic use of the Manzanares Ditch No. 1 prior to that time" he "would have been included in the rotation agreement." In addition, "neither Lupe nor Ralph Archuleta ever contributed labor or money to the maintenance and repair of the common elements of the ditch." The court then found that Ralph Archuleta's version of the facts was not credible:

> The Court concludes that in light of all the testimony, the Plaintiff Ralph Archuleta's version of the facts is not credible. The court finds that from 1968 until his death in 1991, Lupe Archuleta did not use the Manzanares Ditch No. 1. The Court further finds that Theodore Gomez's use of Lupe Archuleta's record interest in the Manzanares Ditch No. 1 during the same time period was actual, adverse, hostile, notorious, exclusive and continuous, thus constituting conclusive evidence of absolute ownership of Lupe Archuleta's record interest in the Manzanares Ditch No. 1 pursuant to C.R.S. 38–41–101.

Evidence in the record supports the water court's findings, and we uphold them.

¶ 23 With respect to whether Gomez had made actual beneficial use to the exclusion of Archuleta utilizing the Archuleta legal interests in both the Archuleta Ditch and Manzanares Ditch No. 1, the water court found that he had and that he accomplished this without enlarging the historical beneficial consumptive use belonging to Archuleta's legal interests in those ditches. Expert evidence in the case supported that Gomez's parcels were "water short" at times and needed the adversely possessed water for crop production.

¶ 24 As to the Archuleta Ditch, the water court found that Gomez had increased his consumptive use by 8.9 acre-feet annually on his upper parcel, above the amount of water available under his rights and to the exclusion of Archuleta, by adversely possessing Archuleta's interest in the ditch, and this use did not enlarge the historical beneficial use belonging to Archuleta's legal interest in that ditch.

¶ 25 As to Manzanares Ditch No. 1, the water court found that Gomez had increased his consumptive use by 5.5 acre-feet annually on his lower parcel, above the amount of water available under his rights and to the exclusion of Archuleta, by adversely possessing Archuleta's legal interest in the ditch, and this use did not enlarge the historical beneficial use belonging to Archuleta's legal interest in that ditch.

¶ 26 Evidence in the record supports the water court's findings, and we uphold them. We conclude that Gomez has adversely pos-

sessed Archuleta's legal interests in the Archuleta Ditch and Manzanares Ditch No. 1.

## 2. An Injunction Is Proper to Reconstruct Manzanares Ditch No. 2 Across the Northern Part of Gomez's Lower Parcel.

¶ 27 Although Gomez did not appeal the water court's finding that he did not adversely possess Archuleta's legal interest in Manzanares Ditch No. 2, that finding is relevant to the injunction issue in this case involving reconstruction of that ditch.[4] The evidence supports an injunction because Gomez wrongfully caused an illegal enlargement of consumptive use of ditch water and wrongfully severed the ditch to the injury of Archuleta's legal interest. *See Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.,* 120 Colo. 423, 429–30, 210 P.2d 982, 985 (1949); *Roaring Fork Club, L.P. v. St. Jude's Co.,* 36 P.3d 1229, 1236–37 (Colo.2001). In its order of October 18, 2011, the water court found and concluded that Gomez had not adversely possessed Archuleta's legal interest in Manzanares Ditch No. 2 and that he had wrongfully severed the ditch so that it no longer extends to Archuleta's parcel:

> The Court finds that *Gomez did not adversely possess Archuleta's interest in the Manzanares Ditch No. 2* because Archuleta continues to irrigate his property through the tail water provided from Gomez's irrigation on his property through the Manzanares Ditch No. 2.
>
> The real question becomes how Archuleta proposes to transport water directly from Manzanares No. 2 to his property. *Previous testimony indicates that Gomez plowed up Manzanares No. 2 and put the water into a sealed-off pipe on the west side of his Lower Parcel so that the ditch no longer extended onto Archuleta's property.*
>
> *Nevertheless, Gomez should be enjoined from prohibiting Archuleta's access to water from the Manzanares Ditch No. 2 (Priority 31).*

4. Our prior remand for further evidence and findings in this case also involved Archuleta's request for an injunction requiring Gomez to

The Court is uncertain whether water from the Manzanares Ditch No. 2 would reach Archuleta's property but for the tail water. The Court reaches this decision based upon the principles it was required to consider on remand and not because Archuleta did anything affirmatively to protect his ownership in the water right during the adverse possession period.

Gomez urges the Court to adopt the position that Archuleta's north pasture is receiving water from a source other than the Manzanares Ditch No. 2. The Court is unwilling to make such a leap of faith. The Court should make a declaration of adverse possession of water "upon reasonably clear and satisfactory evidence." *Losbbaugh* [*Loshbaugh*] *v. Benzel,* 133 Colo. 49, 61–62, 291 P.2d 1064, 1070–71 (1956) (citing *Romminger* [*Rominger*] *v. Squires,* 9 Colo. 327, 329, 12 P. 213, 214 (1886)).

(Emphasis added). A water right decreed for irrigation use cannot be enlarged beyond the amount of water necessary to irrigate the lands for which the appropriation was made. *In re Water Rights of Cent. Colo. Water Conservancy Dist.,* 147 P.3d 9, 14 (Colo. 2006). Cross-examination testimony of Gomez's expert, Gary Thompson, supports rather than refutes a conclusion that Gomez illegally enlarged use of Manzanares Ditch No. 2, rather than adversely possessing Archuleta's interest. Attempting to side-step the question of enlargement posed by Archuleta's counsel, Thompson pointed out the "impossibility" of both Archuleta and Gomez making beneficial consumptive use of the Archuleta legal interest at the same time.

> Q If Mr. Archuleta did not cease to use his water and both he and Mr. Gomez continued to use it, would that be an expansion of use?
>
> A It seems to me that it would be instead of really an expansion of use, it's a—a general impossibility that they could both be using that same interest of the water right at the same time. I mean, the water

restore ditch rights-of-way and allow Archuleta's water to pass through the ditches to his parcel. *Archuleta v. Gomez,* 200 P.3d at 337.

can't be used in both places at the same time.

Q So instead of an expansion of use problem, it is a sort of a logical impossibility. Well, if you're covering more acreage with the same water, that's an expansion of use, isn't it?

A It sometimes is, yes. Not always is but sometimes is. But this would be—this would be the same water—the same water being used on both pieces of ground at the same time, not the water being spread more thinly. It is—it is—the water has been cloned into two pieces of the same water right, again, it's—I think it's impossible. It's either one or the other.

¶ 28 Evidence in the record demonstrates that Archuleta's northern 5.2 acres continuously received an irrigation supply sufficient to annually produce pasture grass before, during, and after Gomez's alleged period of adverse possession. Gomez's own testimony supports the conclusion that the northern portion of Archuleta's property was irrigated by surface runoff and sub-irrigated by subsurface flow from Gomez's irrigation employing Manzanares Ditch No. 2 water:

> Mr. Worley: Now, have they (Lupe Archuleta or his son Ralph Archuleta) used tail water from time to time?
>
> Mr. Gomez: Well, he gets all my tail water. Sub-irrigated. Right now.

*Archuleta v. Gomez,* 200 P.3d at 339.

■ ¶ 29 Thompson calculated the historical beneficial consumptive use of Archuleta's legal interest in Manzanares Ditch No. 2 to be 4.6 acre-feet of water annually. He also determined that Gomez's interception of the water belonging to Archuleta's legal interest produced an additional 3.7 acre-feet of water consumption annually on the Gomez property. The combined effect of Archuleta's water use and Gomez's water use of Manzanares Ditch No. 2 water was an enlargement of the consumptive use made of Archuleta's legal interest in the ditch. As Thompson testified, it is "impossible" for these rivals to consume water simultaneously that belongs to Archuleta's legal interest. "It's either one or the other." Thompson testified that, when the flow of water (typically expressed in c.f.s.) is applied to agricultural crops in this region of Colorado, the water consumption amount is fifty percent (typically expressed in amount of acre-feet of water consumed). The other fifty percent is return flow. As we have consistently iterated in our longstanding case law, return flow belongs to the public's water resource and is subject to appropriation, adjudication, and administration in order of decreed priority. *See Burlington Ditch,* 256 P.3d at 663. The law's prohibition against undecreed enlargements protects flows upon which other appropriators rely in order of their decreed priorities. *Id.*

¶ 30 Gomez held no decreed appropriation that entitled him to benefit from the return flow resulting from Archuleta's use of his legal interest in Manzanares Ditch No. 2. Nevertheless, according to Thompson's calculations, Gomez increased his consumptive use of Manzanares Ditch No. 2 water by 3.7 acre-feet after he severed the ditch from its connection with Archuleta's adjoining property. Thompson testified that Manzanares Ditch No. 2 is so short in length, and so close to the Huerfano River, that return flows from irrigation get back to the river within a very short time. Because Archuleta neither abandoned his legal interest in Manzanares Ditch No. 2, nor did he cease to have the benefit of it on his lands, Gomez's increased use of the waters flowing in the ditch constituted an illegal enlargement of use of Manzanares Ditch No. 2 water. As the evidence in the record demonstrates, Gomez did not dispossess Archuleta of his legal interest in Manzanares Ditch No. 2. All that Gomez accomplished by severing the ditch and increasing his use of ditch water was to possess an amount of water that would otherwise have returned to the Huerfano River, thence to the Arkansas River, as return flows from Archuleta's irrigation use. *See Archuleta v. Gomez,* 200 P.3d at 346.

¶ 31 Thus, the record demonstrates that Gomez committed two wrongful acts: illegal enlargement of a water right and illegal destruction of a ditch. From the time of his original complaint in this case to the appeal now before us, Archuleta has sought reconstruction of Manzanares Ditch No. 2 (Priority No. 31) in order to receive the water his interest in the ditch entitles him to divert.

*Id.* at 337, 348. Archuleta testified about Gomez's actions in plowing under the ditch, as follows, in the 2007 proceedings that led to the first appeal in this case:

Q What did Mr. Gomez do which stopped the No. 31 ditch from reaching your property?

A He plowed it under.

Q Show the Court on Exhibit 1 where Mr. Gomez plowed over the ditch and stopped it from reaching your property, the No. 31 ditch?

A 31 ditch was—No. 31 ditch ran straight through his property and through—this is mine, and he plowed it under throughout his area, his parcel (indicating).

¶ 32 In its order of October 18, 2011, the water court enjoined Gomez "from interfering with Archuleta's rights in Manzanares Ditch No. 2, Priority 31." It is clear that the water court was issuing an injunction. But it added necessary detail to the injunction in a subsequent order dated January 19, 2012, after the time for amending the judgment under C.R.C.P. 59(j) had expired. It directed Gomez to reconstruct the ditch and provide for an easement across Gomez's property. It ordered Gomez to

reconstruct the Manzanares Ditch No. 2 across the northern part of the 40 Acre Tract so that it reaches the northwest corner of Archuleta's north field.

Gomez shall be responsible for the cost of installing a culvert 16 inches in diameter and 16 feet in length, which Gomez will install in the ditch at the location near the northeast corner of the 40 Acre Tract where Gomez has access to his property from the County Road.

Gomez shall give Archuleta a 24 foot wide easement, 12 feet on each side of the centerline of the Manzanares Ditch No. 2.

¶ 33 We reverse the water court's judgment, in part, because it failed in its injunction order of October 18th, 2011, to encompass the necessary scope and detail. It is clear that the water court—having found that Gomez had not proved adverse possession—concluded that Gomez must respect Archuleta's legal interest in water and easement rights for Manzanares Ditch No. 2, but the court abused its discretion in not sufficiently protecting Archuleta's legal interest in both the easement and the water rights of Manzanares Ditch No. 2.

¶ 34 In *Roaring Fork*, we held that the owner of property burdened by a ditch easement may not move or alter that easement unless that owner has the consent of the owner of the easement. 36 P.3d at 1231. A ditch easement is a property right that the burdened estate owner may not alter absent consent of the benefited owner. *Id.* at 1231–32. A water right operating in combination with the easement for the ditch are vested property rights. *Id.* at 1238. Ditches are linear delivery systems that function as a part of a whole. *Id.* Nonconsensual, unilateral alterations jeopardize valuable vested property rights both in the easement and in the water rights exercised by means of the ditch. *Id.*

¶ 35 Because Gomez wrongfully interfered with Archuleta's water and easement rights for Manzanares Ditch No. 2 and enlarged the use of that ditch's water, we direct the water court to enter an injunction ordering Gomez to reconstruct the ditch, provide for an easement for the ditch across the northern part of his forty-acre lower parcel to Archuleta's adjoining parcel, and cease diverting any water that Archuleta's legal interest entitles Archuleta to divert to his parcel. The injunction may include the terms the water court set forth in its belated January 19, 2012, order and any additional terms appropriate to prevent illegal enlargement and accomplish protection of Archuleta's legal interest in Manzanares Ditch No. 2. *See Enlarged Southside Irrigation Ditch*, 120 Colo. at 429–30, 210 P.2d at 985 (directing injunction to prevent an enlarged use of water that should have been returned to the stream for the benefit of other appropriators).

### 3. Costs and Attorney Fees

¶ 36 The water court entered judgment for $12,372.39 in costs in favor of Gomez and against Archuleta in its February 8, 2012, order. This order followed up the water court's order of February 7, 2012, determining that Gomez was the prevailing party

in the litigation, because Gomez established adverse possession of Archuleta's legal interests in the Archuleta Ditch and Manzanares Ditch No. 1. In explaining this award of costs, the water court observed that "to obtain water rights by adverse possession is a significant accomplishment, especially in a water-short river such as the Arkansas River." The water court pointed out that, while Archuleta was "successful on maintaining ownership of the Manzanares Ditch No. 2, he did not acquire anything he did not already own." Whether to award costs is a matter within the trial court's discretion, and we will not reverse its determination on appeal absent a clear abuse of discretion. See § 13-16-122, C.R.S. (2012); C.R.C.P. 54(d); *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 389-90 (Colo.1994).[5] We find no abuse of discretion here.

¶ 37 As to Gomez's request for attorney fees under section 13-17-102(4) against Archuleta, alleging that Archuleta's position in regard to the Archuleta Ditch was substantially frivolous, groundless, or vexatious, the water court in a separate order dated February 7, 2012, refused to award attorney fees to Gomez against Archuleta. The water court found that Archuleta had reasonably relied on the opinion of his expert, Jeffrey Clark. In response, Gomez points out that Clark based his opinion, at least with regard to the Archuleta Ditch and Manzanares Ditch No. 1, on Archuleta's evidence, which the water court found not to be credible. On the other hand, Archuleta has successfully resisted Gomez's claim for adverse possession of any

legal interest in Manzanares Ditch No. 2 and has succeeded in this appeal in obtaining an injunction ordering reconstruction of the ditch. To award the attorney fees Gomez requested would require a hearing, findings, and entry of an order specifically setting forth reasons for finding Archuleta's defense of his legal interests to be frivolous, groundless, or vexatious. See § 13-17-103(1), C.R.S. (2012) (requiring the court to consider factors and specifically set forth the reasons for awarding attorney fees); *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo.2005); *Pedlow v. Stamp*, 776 P.2d 382, 386 (Colo.1989) (requiring the court to hold a hearing pursuant to section 13-17-103(1)). The water court made no such findings, nor do we. We agree with the water court that the ordinary rule—each party is responsible for its own attorney fees—should prevail in this case. *See City of Aurora ex rel. Util. Enter.*, 105 P.3d at 618.

## II.

¶ 38 Accordingly, we affirm the judgment of the water court in part, reverse it in part, and return this case for entry of an injunction consistent with this opinion.

---

5. Archuleta asserts that the water court's award of costs to Gomez cannot stand because it occurred after the time for ruling on motions under C.R.C.P. 59(j) had expired. We disagree. Instead, C.R.C.P. 54 controls this issue. The determination of who is a prevailing party and may receive an award of costs may occur at any time after resolution of all the claims pending before the water court. *See Matter of Water Rights of Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 891 P.2d 981, 984 (Colo.1995).